**Opinion issued December 3, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00571-CV

————————————

## IN THE INTEREST OF A.G. AND F.G., CHILDREN

———————————————————————————————————

**On Appeal from the 313th District Court**
**Harris County, Texas**
**Trial Court Case No. 2013-06904J**

———————————————————————————————————

## MEMORANDUM OPINION

The trial court terminated the parental rights of S.F., the mother, to her two children, A.G. and F.G.[1]  In two issues, S.F. argues that the evidence was legally and factually insufficient to support the termination of her parental rights under

---

[1]     The trial court also terminated the parental rights of the children's fathers. However, only the mother appealed the trial court's judgment, so neither father is a party to this appeal.

Texas Family Code section 161.001(1)(D) and under Family Code section 161.001(2).

We affirm.

## Background

S.F. is the mother of A.G. and F.G., who were born on August 15, 2001, and December 26, 2011, respectively. The Texas Department of Family and Protective Services ("DFPS") became involved in the children's lives on November 15, 2013, when a neighbor reported that F.G.—who was not quite two years old at the time—had been wandering unsupervised in the apartment complex courtyard for two hours. Police arrived to investigate, and the neighbor reported that F.G. was often left unsupervised. The police determined that S.F. had left F.G. under the supervision of A.G., who was twelve years old at the time, and had gone across the street to a bar. S.F. was eventually charged with and convicted of child endangerment for inadequately supervising F.G.

During its investigation of S.F., DFPS talked with A.G. and S.F. A.G. informed investigators that no one watched her when S.F. was not home, but S.F. would have someone check on her and S.F. or would leave a phone for A.G. She also stated that S.F. sometimes smoked marijuana. S.F. told the DFPS investigator that the neighbor reported her to DFPS because she was jealous and wanted her children. S.F.'s apartment manager informed DFPS that she had received

numerous complaints from tenants at the complex who reported seeing F.G. wandering the complex unsupervised. The apartment manager also informed DFPS that S.F. was behind on her rent and would soon be evicted.

As a result of its investigation, DFPS placed S.F. on a Safety Plan and instituted a Parental Child Safety Placement, providing that the children could reside with their godmother, T.E., and that S.F. would have supervised visitation. On December 1, 2013, S.F. sought treatment at Bayshore Medical Center and was diagnosed with depression. A doctor from the hospital contacted DFPS to inform it of S.F.'s diagnosis and to inform it that S.F. had tested positive for marijuana use and was being discharged to the Bay Area Homeless Shelter. S.F. acknowledged the marijuana use, admitted that she had been diagnosed with bipolar disorder but was not taking the necessary medication, and asked that the children be moved from the godmother's home into foster care. The godmother, T.E., likewise asked DFPS to move the children because her relationship with S.F. had become difficult—S.F. "kept calling her and cussing her out." The children were removed to a foster home temporarily, but they eventually returned to T.E.'s home.

On December 18, 2013, DFPS filed its original petition in this case seeking emergency custody of A.G. and F.G. and ultimately seeking termination of S.F.'s parental rights. DFPS placed S.F. on a family service plan, which the trial court found to be reasonable and ordered S.F. to complete in March 2014. The family

service plan required, among other things, that S.F. complete psychosocial, psychiatric, and substance abuse evaluations and follow any recommendations; that she take parenting classes, participate in individual counseling, and obtain a sponsor to address her substance abuse; and that she refrain from engaging in illegal activities, maintain employment and housing, and undergo drug testing. However, S.F. failed to complete these requirements.

At trial, DFPS presented evidence, in the form of an affidavit and a written evaluation of S.F. conducted by the Children's Crisis Care Center, detailing the circumstances of S.F.'s conviction for child endangerment of F.G. and the children's coming into DFPS care as set out above. DFPS supervisor Tina Marsh, who had been involved in the children's case from the beginning, testified that S.F. had been convicted of child endangerment with regard to F.G. and that the endangerment conviction was the reason the children came into DFPS's care. Marsh stated that S.F. had been receiving services from DFPS for more than a year, and during that time, she had done nothing to alleviate the concerns raised by her inadequate supervision of F.G. Marsh testified that, based on their discussions regarding her conviction, S.F. did not see a problem with going across the street to drink at a bar and leaving F.G. under A.G.'s supervision.

Marsh testified that she could not imagine any progress that S.F. could make in the immediate future that would convince DFPS that it was safe for the children

to return to her care. Marsh testified that DFPS had provided S.F. with a family service plan and had offered S.F. services for over a year, but she had not completed her service plan. Marsh stated that S.F. had completed the psychosocial evaluation and substance abuse assessment required by her family service plan, but she had not followed any of the recommendations resulting from those evaluations, including completing a "full-blown" psychological evaluation, taking parenting classes, and participating in individual counseling and substance abuse treatment. S.F. had likewise failed to maintain stable employment and housing, as she was unemployed at the time of trial and did not have a known address. S.F. had not provided any support to the children. S.F. also had failed to submit to random drug testing in the six months prior to trial, but she had tested positive for marijuana use on more than one occasion prior to that time.

Marsh testified that she spoke to S.F. the day before trial, and S.F. told her that she was starting inpatient treatment at Santa Maria Hospital. S.F. told Marsh that she had been trying to get a spot at the treatment facility for over a year, but Marsh believed, based on her experience, that if S.F. had been "persistent and . . . ready for treatment" she would have been able to get in treatment more quickly using the list of providers given to her by DFPS. Marsh stated that S.F. had been diagnosed with bipolar disorder and possibly schizophrenia and had refused to follow the recommended treatment.

Marsh testified that, at the time of trial, both children were placed with their godmother, T.E. Marsh believed that T.E. was meeting the children's physical and emotional needs and that neither A.G. nor F.G. has any special needs. Marsh stated that DFPS's goal for the children's placement was adoption and that T.E. was willing to adopt both children but was "still legally married" and needed to resolve that issue first. Marsh also acknowledged that A.G., who was thirteen years old at the time of trial, was bonded with her mother, did not want the court to terminate S.F.'s parental rights, and did not want to be adopted. A.G.'s attorney ad litem reiterated A.G.'s desire that the court not terminate S.F.'s parental rights.

T.E., the children's godmother and caregiver at the time of trial, testified that the girls had been living with her for approximately six months. She stated that S.F. would visit "periodically," or once every few weeks, and that she would "stay like five minutes or so and then leave." T.E. testified that S.F. provided her with food stamps on two occasions to help with the food bill but had not otherwise provided any support for the children. S.F. told T.E. that she was "trying to get help" but did not specify what help she was seeking, and T.E. noticed during her visits that S.F. did not appear healthy. Rather, she described S.F. as "down" and "real tired looking." T.E. also believed that S.F. had come for visits while under the influence of drugs, and she based her belief on her observations that S.F.'s speech was slurred and her eyes were glassy and red.

6

T.E. testified that the children were both doing well under her care. She testified that A.G. needed summer school to improve her reading and that she would make sure A.G. got the help she needed in that area. T.E. had been caring for the girls without receiving financial assistance from the government or DFPS, and she was willing to continue caring for the girls because she loves them and believes it is the right thing to do. T.E. stated that her boyfriend, who lived with her and the children, was present with her at trial and that she and her husband had been separated for more than twenty years. T.E. and her boyfriend were both employed and contributed to the children's care.

The trial court found clear and convincing evidence that S.F. violated Family Code subsections 161.001(1)(D), (E), (L), and (O) and that termination of her parental rights to both children was in the children's best interest. Accordingly, the trial court rendered its final judgment terminating S.F.'s parental rights to A.G. and F.G. and naming DFPS as the permanent managing conservator. This appeal followed.

## Sufficiency of the Evidence

S.F. challenges the sufficiency of the evidence supporting the trial court's determinations that termination was proper under Family Code subsection 161.001(1)(D) and that termination of her parental rights was in the children's best interest.

## A.    Standard of Review

In a case to terminate parental rights brought by DFPS under section 161.001, DFPS must establish, by clear and convincing evidence, (1) that the parent committed one or more of the enumerated acts or omissions justifying termination and (2) that termination is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001 (Vernon 2014); *In re C.H.*, 89 S.W.3d 17, 23 (Tex. 2002). "Clear and convincing evidence" is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established."  TEX. FAM. CODE ANN. § 101.007 (Vernon 2014); *In re J.O.A.*, 283 S.W.3d 336, 344 (Tex. 2009).

In conducting a legal-sufficiency review in a parental-rights-termination case brought by DFPS under section 161.001, we must look at the entire record to determine whether the evidence, viewed in the light most favorable to the finding, is such that a reasonable factfinder could have formed a firm belief or conviction about the truth of the matter on which DFPS bore the burden of proof.  *See In re J.O.A.*, 283 S.W.3d at 344–45 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).  We "must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so," and we "should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been

incredible." *Id.* at 344; *Jordan v. Dossey*, 325 S.W.3d 700, 712–13 (Tex. App.—Houston [1st Dist.] 2010, pet. denied).

In conducting a factual-sufficiency review, we view all of the evidence, including disputed or conflicting evidence. *See In re J.O.A.*, 283 S.W.3d at 345. We should consider whether the disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if, "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction" regarding the finding under review. *In re J.O.A.*, 283 S.W.3d at 345 (quoting *In re J.F.C.*, 96 S.W.3d at 266).

DFPS must establish both elements—that the parent committed one of the acts or omissions enumerated in section 161.001(1) and that termination is in the best interest of the child. *See* TEX. FAM. CODE ANN. § 161.001; *In re C.H.*, 89 S.W.3d at 23. Termination may not be based solely on the best interest of the child as determined by the trier of fact. *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). However, "[o]nly one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003).

**B.**     **Findings Pursuant to Section 161.001(1)**

In her first issue, S.F. argues that the evidence was legally and factually insufficient to establish that she endangered the children pursuant to subsection 161.001(1)(D). *See* TEX. FAM. CODE ANN. § 161.001(1)(D) (providing that court may terminate parent-child relationship if parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical health or emotional well-being of the child").

S.F. does not challenge the sufficiency of the evidence supporting the trial court's findings under subsections 161.001(1)(E), (L), or (O). *See id.* § 161.001(1)(E) (providing that court may terminate parent-child relationship if parent has "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical health or emotional well-being of the child"); *id.* § 161.001(1)(L)(x) (permitting termination of parental rights when parent had been found guilty of child endangerment); *id.* § 161.001(1)(O) (permitting termination of parental rights when parent has failed to comply with provisions of court order that specifically established actions necessary for parent to obtain return of child). "Only one predicate finding under section 161.001(1) is necessary to support a judgment of termination when there is also a finding that termination is in the child's best interest." *See In re A.V.*, 113 S.W.3d at 362. Because S.F. does not challenge the sufficiency of the evidence supporting the trial

court's findings pursuant to subsections 161.001(1)(E), (L), or (O), and the trial court also found that termination was in the children's best interest, as discussed below, we need not address the sufficiency of the evidence to support its findings pursuant to subsection 161.001(1)(D). *See id.*

We overrule S.F.'s first issue.

## C.     Findings on Children's Best Interest

In her second issue, S.F. argues that the evidence was insufficient to support the trial court's conclusion that termination of her parental rights was in the children's best interest.

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. TEX. FAM. CODE ANN. § 263.307(a) (Vernon 2014). The Family Code and the Texas Supreme Court have both set out numerous factors to be considered in determining a child's best interest, including, among others: the child's age and physical and mental vulnerabilities; the child's desires; the magnitude, frequency, and circumstances of harm to the child, including current and future danger to the child; whether there is a history of substance abuse by the child's family; the willingness and ability of the child's family to seek out, accept, and complete counseling services and to

11

cooperate with and facilitate an appropriate agency's close supervision; whether the child's family demonstrates adequate parenting skills, including providing the child and other children under the family's care with minimally adequate health and nutritional care, guidance and supervision, and a safe physical home environment; the stability of the home or proposed placement; and the parent's acts or omissions indicating an improper parent-child relationship and any excuses for the acts or omissions. *See id.* § 263.307(b); *In re R.R.*, 209 S.W.3d at 116; *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

This is not an exhaustive list, and a court need not have evidence on every element listed in order to make a valid finding as to the child's best interest. *In re C.H.*, 89 S.W.3d at 27. The evidence supporting the statutory grounds for termination may also be used to support a finding that the best interest of the child warrants termination of the parent-child relationship. *Id.* at 28; *In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Furthermore, the best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *See In re N.R.T.*, 338 S.W.3d at 677.

Here, multiple factors support the trial court's finding that termination was in the children's best interest. A.G. was thirteen and F.G. was three at the time of trial, and they were living with their godmother, who was providing for their

emotional and physical needs. F.G.'s age and both children's physical and mental vulnerabilities weigh in favor of terminating S.F.'s parental rights. *See* TEX. FAM. CODE ANN. § 263.307(b); *In re R.R.*, 209 S.W.3d at 116.

S.F. had been convicted of child endangerment for leaving F.G. unsupervised, and she frequently left both A.G. and F.G. unsupervised. A.G. testified that no one watched her when her mother was gone and acknowledged that her mother left her to supervise F.G. and sometimes used marijuana. S.F. tested positive for drug use on more than one occasion after the children were removed from her care, and she did not comply with DFPS's requests for random drug tests in the six months prior to trial. *In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.) ("A parent's engaging in illegal drug activity after agreeing not to do so in a service plan for reunification with her children is sufficient to establish clear and convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of her children.").

S.F. failed to complete her family service plan, including the requirements that she complete substance abuse treatment, parenting classes, and individual counseling. She likewise failed to obtain stable housing or employment. S.F. told Marsh that she did not think there was any problem with leaving the children unsupervised so that she could visit a bar. After the children were removed, she visited the children only sporadically and failed to provide support for them

beyond giving T.E. food stamps on two occasions. Thus, the record contains evidence regarding circumstances that resulted in harm to the children and a lack of physical safety for the children. It also revealed the extent of S.F.'s history of mental health issues and drug abuse, her unwillingness to complete the necessary treatment or other court-ordered services, and her lack of parenting skills. *See* TEX. FAM. CODE ANN. § 263.307(b) (providing that, in determining best interest of child, courts should consider circumstances of harm, history of substance abuse, willingness to complete services, demonstration of parenting skills, and any excuse for prior acts or omissions); *In re E.C.R.*, 402 S.W.3d 239, 249 (Tex. 2013) (holding that findings under section 161.001(l)(O) that parent failed to complete court-ordered services can support best interest finding); *Holley*, 544 S.W.2d at 371–72 (providing that, in determining best interest of child, courts should examine stability of home and proposed placement and parent's acts or omissions indicating improper relationship).

Regarding the children's placement at the time of trial, Marsh testified that T.E. had been caring for the children for the six months prior to trial and was meeting the children's needs. Marsh further testified that T.E. wanted to adopt them. Marsh stated that permanent placement in a stable adoptive home was in both children's best interest. T.E. testified that she had been providing for the girls without financial help from DFPS or the government and that she wanted to

14

continue to do so because she loved the girls and thought caring for them was the right thing to do. T.E. and her boyfriend were both employed and participated in the girls' care. Thus, the stability of the proposed placement also weighs in favor of terminating S.F.'s parental rights. *See* TEX. FAM. CODE ANN. § 263.307(b) (providing courts should consider stability of proposed placement in determining children's best interest).

We conclude that the evidence was legally sufficient to support the trial court's finding that termination of S.F.'s parental rights to A.G. and F.G. was in the children's best interest. *See In re J.O.A.*, 283 S.W.3d at 344.

S.F. argues that the evidence was insufficient to support the trial court's best-interest finding because A.G., who was thirteen at the time of trial, was bonded to her and did not want S.F's parental rights to be terminated. The record contains no evidence regarding A.G.'s level of maturity or her reasoning for wanting S.F. to retain her parental rights. *See In re D.W.*, 445 S.W.3d 913, 926 (Tex. App.—Dallas 2014, pet. denied) (holding that child's preference should not be considered absent showing of sufficient maturity). And evidence that A.G. loves her mother and wants to maintain a relationship with her does not outweigh the evidence of S.F.'s endangering conduct and unsuitability as a parent. *See id.* (holding that child's love for parent and enjoyment of visits is "only marginally relevant" to best-interest determination); *see also W.D. v. Tex. Dep't of Family &*

*Protective Servs.*, No. 03-14-00581-CV, 2015 WL 513267, at *6 (Tex. App.—Austin Feb. 5, 2015, no pet.) (mem. op.) (stating that even when children's desires arguably weigh in favor of allowing parent to retain her parental rights, factfinder may still reasonably conclude termination was in children's best interest when record demonstrated that parent could not provide for children's safety, would not take advantage of programs designed to help her, lacked appropriate parenting skills, and had no excuse for her prior acts and omissions).

S.F. also argues that T.E.'s home was not a suitable placement for the children because of her relationships with "multiple" men. However, the record does not support S.F.'s assertion that T.E. is an unsuitable caregiver. The record demonstrates only that T.E. had been separated from her husband for more than twenty years and that, at the time of the termination hearing, she was living with her boyfriend, who participated in the care and support of the children. Furthermore, even if the court later determines that the children's current placement is unsuitable, this does not outweigh the testimony and other evidence indicating that placement in a stable, permanent home is in the children's best interest and that S.F. cannot supply such a home. *See In re C.H.*, 89 S.W.3d at 28 (holding that relevant inquiry is whether factfinder could reasonably form firm belief or conviction that termination of parental rights was in child's best interest "even if the agency is unable to identify with precision the child's future home

environment," because court did not want best-interest determinations reversed on sole ground that adoptive family had not yet been located); *In re J.H.*, No. 09-15-00171-CV, 2015 WL 5093400, at \*6–7 (Tex. App.—Beaumont July 27, 2015, no pet.) (mem. op.) (upholding trial court's best-interest finding even where child was "struggling" with current placement when evidence was otherwise sufficient to demonstrate that mother could not meet child's needs).

Viewing all of the evidence, as we must, we conclude that any disputed evidence was not so significant that a factfinder could not reasonably have formed a firm belief or conviction that termination of S.F.'s parental rights was in the children's best interest. *See In re J.O.A.*, 283 S.W.3d at 345. Thus, we conclude that the evidence was both legally and factually sufficient to support the trial court's finding that termination was in the children's best interest. *See id.* at 344–45.

We overrule S.F.'s second issue.

## Conclusion

We affirm the judgment of the trial court.

Evelyn V. Keyes
Justice

Panel consists of Justices Jennings, Keyes, and Bland.

17