

In The

Court of Appeals

Seventh District of Texas at Amarillo

_____

No. 07-18-00205-CV

_____

IN THE INTEREST OF S.K.J.J.F. AKA S.F., A CHILD

On Appeal from the 69th District Court
Dallam County, Texas
Trial Court No. 12,046; Honorable Jack Graham, Presiding

August 28, 2018

## MEMORANDUM OPINION

Before QUINN, CJ., and CAMPBELL and PIRTLE, JJ.

Appellant, J.F., appeals the trial court's order terminating his parental rights to S.F., his daughter.[1]  On appeal, he asserts that the evidence is legally and factually insufficient to support the trial court's findings that (1) he violated section 161.001(b)(1)(O) and (Q) of the Texas Family Code; TEX. FAM. CODE ANN. § 161.001(b)(1)(O), (Q) (West Supp.

---

[1] To protect the privacy of the parties involved, we refer to them by their initials.  See TEX. FAM. CODE ANN. § 109.002(d) (West 2014).  See also TEX. R. APP. P. 9.8(b).  S.F.'s mother voluntarily relinquished her parental rights and is not a party to this appeal.

2017), and (2) that termination was in S.F.'s best interest. The trial court's order is affirmed.

BACKGROUND

S.F., a female child, was born in April 2016, and she is approximately two years old. The day before her delivery, T.L., her mother, tested positive for marijuana. The Department of Family and Protective Services opened a case and during its investigation for neglectful supervision, T.L. admitted using drugs during her pregnancy. She claimed, however, that was before finding out she was pregnant. When S.F. was removed, J.F. was under indictment for unlawful possession of a firearm by a felon. In January 2017, the Department closed its case after J.F. and T.L. received clean drug screens.

In May, the Department received a second report of neglectful supervision involving S.F. Shortly thereafter, T.L. and S.F. tested positive for methamphetamine. T.L. admitted to caseworkers that, at the end of April, she had been at a drug house with S.F. Throughout this period, J.F. had been living with T.L. and he tested positive for marijuana. The Department placed S.F. with her maternal cousin.

On May 16, 2017, the Department filed its first amended petition to terminate J.F.'s parental rights under section 161.001(b)(1)(O) and (Q) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(O), (Q) (West Supp. 2017).[2] On May 30, J.F. pleaded guilty to unlawful possession of a firearm by a felon. Being his third felony

---

[2] Hereafter, we will refer to provisions of the Texas Family Code as "section" and "§."

conviction, his punishment was enhanced to that of a habitual felon and he was sentenced to twenty-five years confinement.[3]

In June 2017, while incarcerated, J.F. executed a family service plan that required among other things, that he participate in parenting classes, undergo a substance abuse assessment, comply with each requirement of the family service plan and complete all court-ordered services, participate in any services offered to him while incarcerated, provide proof of safe and stable housing, locate and maintain appropriate employment, complete a psychosocial assessment, attend individual counseling, submit to random drug tests, and test negative for drugs.[4]   Also in June, T.L. tested positive for methamphetamine.[5]

On May 11, 2018, the trial court held its final hearing.  The Department's evidence indicated that S.F. was doing well and had bonded with her foster family.  When she was initially placed, she had a variety of developmental delays, i.e., she was not sitting up or crawling.  By the time of the hearing, she was walking, running, using sign language, feeding herself, and communicating well with others.  Furthermore, her foster family wanted to adopt her.

J.F. appeared by telephone.  His expected release date from prison is 2027 and he will be eligible for parole in 2019.  During the final hearing, he candidly admitted that

---

[3] In April 2004, and again in December 2006, J.F. was convicted of the felony offenses of possession of a controlled substance.  As enhanced, J.F.'s offense was punishable by confinement for any term of not more than 99 years or less than 25 years.  *See* TEX. PENAL CODE ANN. § 12.42(d) (West Supp. 2017).

[4] In its order of July 2, 2017, the trial court made the family service plan and all future modifications orders of the trial court.

[5] Although she also executed a plan of family service, she did not complete any services.

3

parole was only a "possibility" and he did not know when he would be released. He testified that, while incarcerated, he had signed up for a parenting course that was cancelled, attended some AA and NA meetings, and had completed a Christian-based program related to life skills. Although the Department's investigator testified J.F. knew T.L. was using methamphetamine prior to S.F.'s second removal, J.F. denied that he was aware she was using drugs. He admitted using marijuana but asserted that after S.F. was born, he stopped. He also acknowledged that the Department had informed him that he tested positive for drugs in May 2017. During his incarceration, he has communicated with the Department and S.F. by mail monthly. S.F.'s conservatorship worker and caseworker opined that termination was in S.F.'s best interest.

In May 2018, the trial court issued its *Order of Termination* finding by clear and convincing evidence that J.F. had failed to comply with the provisions of its court order specifically establishing the actions necessary for S.F. to be returned to him, that S.F. had been in the temporary or permanent managing conservatorship of the Department for not less than nine months since her removal under chapter 262 for abuse or neglect; § 161.001(b)(1)(O), and that he had knowingly engaged in criminal conduct that resulted in his conviction of an offense and confinement or imprisonment and inability to care for S.F. for not less than two years from the date of filing of the petition. § 161.001(b)(1)(Q). This appeal followed.

STANDARD OF REVIEW

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently,

4

termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

In a legal sufficiency challenge, we credit evidence that supports the verdict if reasonable jurors could have done so and disregard contrary evidence unless reasonable jurors could not have done so. *In re K.M.L.*, 443 S.W.3d 101, 112-13 (Tex. 2014). However, the reviewing court should not disregard undisputed facts that do not support the verdict to determine whether there is clear and convincing evidence. *Id.* at 113. In cases requiring clear and convincing evidence, even evidence that does nothing more than raise surmise and suspicion will not suffice unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *Id.* If, after conducting a legal sufficiency review, a court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In reviewing termination findings for factual sufficiency, a court of appeals must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing; *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002) (citing *In re C.H.*, 89 S.W.3d at 25), and give due deference to a jury's fact findings. *In the Interest of H.R.M.*,

5

209 S.W.3d 105, 109 (Tex. 2006) (per curiam) (an appellate court should not supplant the jury's judgment with its own). We must determine whether the evidence is such that a fact finder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* If, after considering the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.*, 96 S.W.3d at 266.

The clear and convincing standard does not mean that the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In the Interest of T.N.*, 180 S.W.3d 376, 382 (Tex. App.—Amarillo 2005, no pet.). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* Also, the trier of fact, as opposed to the reviewing body, enjoys the right to resolve credibility issues and conflicts within the evidence. *Id.* It may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id.* at 382-83 (citing *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ)).

Only one statutory ground is required to support termination. *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied). Although evidence presented may be relevant to both the statutory grounds for termination and best interest, each element must be established separately and proof of one element does not relieve the burden of proving the other. *See In re C.H.,* 89 S.W.3d at 28.

ISSUE ONE—SECTION 161.001(b)(1)(Q) [6]

Subsection (Q) permits termination when the clear and convincing evidence shows that the parent "knowingly engaged in criminal conduct that has resulted in the parent's: (i) conviction of an offense and (ii) confinement or imprisonment and inability to care for the child not less than two years from the date of filing the petition." § 161.001(b)(1)(Q). *See In re A.V.*, 113 S.W.3d 355, 360 (Tex. 2003) (the purpose of subsection (Q) is to protect children from neglect). We apply subsection (Q) prospectively. *Id.* That is, subsection (Q) permits termination if the evidence shows that, during the two-year period following the initiation of the termination proceedings, the parent will be confined or imprisoned and unable to care for the child. *Id.* at 360-61. *See In the Interest of J.M.G.*, No. 07-16-00202-CV, 2016 Tex. App. LEXIS 11729, at *8-9 (Tex. App.—Amarillo Oct. 27, 2016, no pet.) (mem. op.) (subsection (Q) focuses on the parent's future imprisonment and inability to care for the child).

Establishing incarceration for the requisite period does not, by itself, justify termination pursuant to subsection (Q). *In re B.M.R.*, 84 S.W.3d 814, 818 (Tex. App.—Houston [1st Dist.] 2002, no pet.). However, when the Department proves by clear and convincing evidence that the requirements of subsection (Q) have been met, "the trial court can reasonably infer that the parent will be unable to provide personal care for the child." *In the Interest of Caballero*, 53 S.W.3d 392, 397-98 (Tex. App.—Amarillo 2001, pet. denied) (op. on reh'g). *See In the Interest of B.D.A.*, 546 S.W.3d 346, 358 (Tex. App.—Houston [1st Dist.] 2018, no pet.). At this point, the burden shifts to the parent to "produce some evidence as to how they [sic] would provide or arrange to provide care for

---

[6] Hereinafter, this subsection may also be referred to simply as "subsection (Q)."

7

the child during that period." *In the Interest of Caballero*, 53 S.W.3d at 396. "When that burden of production is met, the Department would have the burden of persuasion that the arrangement would not satisfy the parent's duty to the child." *Id.*

From the evidence at the final hearing, a reasonable fact finder could have determined that the Department filed its petition on May 16, 2017; J.F. was convicted of unlawful possession of a firearm by a felon on May 30, 2017; and he was sentenced to twenty-five years confinement due to the commission of two prior felonies that were drug-related. *See* § 161.001(b)(1)(Q). The fact finder could also have formed a firm belief or conviction that his earliest release date was 2020; his earliest parole date was 2019; and his belief that he would be granted parole before the two-year statutory limit expired was unlikely and speculative at best.

While parole-related evidence is relevant to determine whether the parent will be released in two years, the mere introduction of such evidence does not prevent a fact finder from forming a firm conviction or belief that the parent will remain incarcerated for at least two years*. See In re H.R.M.*, 209 S.W.3d at 109 (parole decisions are inherently speculative and the decision rests entirely within the parole board's discretion). In addition, while J.F. presented evidence that while incarcerated, he attended some classes and wrote letters to S.F., he produced no evidence as to how he would provide or arrange to provide care for S.F. during his incarceration.

Consequently, we hold there was legally and factually sufficient clear and convincing evidence presented at the final hearing to allow a reasonable trier of fact to form a firm belief or conviction that J.F. knowingly engaged in criminal conduct resulting

in his conviction of an offense that resulted in his imprisonment and inability to care for S.F. for not less than two years from the date of the filing of the Department's petition. *See In the Interest of Caballero*, 53 S.W.3d at 396. Accordingly, termination of J.F.'s parental rights under subsection (Q) was proper and his first issue is overruled.[7]

ISSUE TWO—BEST INTEREST

The Department was also required to prove by clear and convincing evidence that termination of J.F.'s parental rights was in the child's best interest. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Only if no reasonable fact finder could have formed a firm belief or conviction that termination of his parental rights was in the child's best interest can we conclude the evidence is insufficient. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). Prompt and permanent placement of the child in a safe environment is also presumed to be in the child's best interest. *See* § 263.307(a) (West Supp. 2017). Section 263.307(b) provides a non-exhaustive list of factors to consider in deciding best interest. *Id.* at (b). Additionally, the Supreme Court has set out other factors to consider when determining the best interest of a child. *See Holley*, 544 S.W.2d at 371-72. Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist

---

[7] Because only one statutory ground is needed to support termination, we need not consider whether termination was also proper under section 161.001(b)(1)(O). *In re K.C.B.*, 280 S.W.3d 888, 894-95 (Tex. App.—Amarillo 2009, pet. denied).

the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

Evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). The best interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as direct evidence. *See In re N.R.T.*, 338 S.W.3d 667, 677 (Tex. App.—Amarillo 2011, no pet.). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

S.F. is approximately two-years old and too young to express her desire. Although J.F. has no physical contact with S.F. while incarcerated, he presented evidence that he maintains contact with her by posting letters monthly and sending her drawings. While admirable, because of her age, this factor neither weighs for nor against termination.

The second *Holley* factor weighs in favor of termination because S.F. presently has emotional and physical needs that can only be met by her foster parents due to J.F.'s incarceration. The third factor also weighs in favor of termination because in addition to his current felony conviction, J.F. has been convicted twice for felony possession of

10

controlled substances and has been labeled a "habitual" felon due to his latest conviction. In addition, S.F. was removed the first time due to drug-related activity, and shortly after the second removal due to parental substance abuse, J.F. tested positive for marijuana.

The evidence also established that J.F. has a history of making bad parental choices including engaging in drug use, drug-related crimes, and a firearm-related felony offense that has resulted in a sentence of twenty-five years confinement. This fourth *Holley* factor weighs in favor of termination. Although the Department has many programs from which J.F. could benefit, he is unable to take advantage of them due to his incarceration. Although he has availed himself of some programs while incarcerated, there are many required activities in the family service plan that J.F. has failed to complete. In addition, he has yet to show he can remain drug-free outside of confinement or be a responsible parent to S.F. This fifth *Holley* factor also weighs in favor of termination. Thus, *Holley* factors (2), (3), (4), and (5) weigh in favor of termination.

On the other hand, S.F. is doing well and has bonded with her foster family. She is living in a stable, drug-free environment. She also has shown marked improvement developmentally since her initial placement and her foster family loves her and wants to adopt her. In addition, J.F.'s testimony during the final hearing establishes that he approves of her placement and is happy that his daughter is with her foster family. *Holley* factors (6) and (7) also support termination.

Accordingly, we find that a reasonable trier of fact could have formed a firm belief or conviction that termination of J.F.'s parental rights was in S.F.'s best interest and the

evidence supporting the trial court's finding is legally and factually sufficient.  J.F.'s second issue is overruled.

CONCLUSION

The trial court's order terminating J.F.'s parental rights to his child, S.F., is affirmed.


Patrick A. Pirtle
Justice