NO. 07-04-0499-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

DECEMBER 6, 2005

_____

IN THE INTEREST OF T.N., B.N. AND K.N., CHILDREN

_____

FROM THE 320TH DISTRICT COURT OF POTTER COUNTY;

NO. 67,291-D; HON. DON EMERSON, PRESIDING

_____

Before QUINN, C.J., REAVIS, J., and BOYD, S.J.[1]

**OPINION**

In this appeal, appellant Bambi Passmore challenges the termination of her parental rights to T.N., B.N., and K.N., the minor children. In presenting that challenge, and in one issue, she argues that the evidence is insufficient to support the termination. Disagreeing, we affirm the trial court's judgment.

Factual Background

The nature of appellant's challenge requires that we recount the trial evidence in some detail. Appellant did not appear at the trial and her attorney requested a continuance

_____

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2005).

because of the absence of her client, which was refused by the trial court. The propriety of that refusal is not challenged in this appeal.

At the hearing on the petition of the Texas Department of Protective and Regulatory Services (the Department) to terminate appellant's parental rights, the Department presented five witnesses. Katie Klaehn, a case worker and supervisor for the Department, testified that on September 24, 2002, the Department had received an intake on the children in which it was asserted that the children were with appellant who was living out of her car, was using drugs, and was not providing food or a proper home for the children. Klaehn investigated the intake and contacted appellant who was incarcerated at the time. Appellant admitted to the witness that she did not have the ability to provide for the children's needs and that she was not providing them with food or a proper environment. Because she would not do so, her brother and her mother would, at times, bring the children food. She admitted that she was using "crank" (a street term for methamphetamine) as well as Loritab. She said her drug supplier was named Harold but she did not give his last name.

Appellant admitted that on occasion she would spend the night with Harold and had left the children in the car while she got drugs from him. She also admitted that she had allowed the children to be around Harold even though she knew him to be a drug dealer. Appellant conceded that the pair had used drugs around the children, and she acknowledged that she had supervised the children while she was under the influence of drugs.

Appellant had attended a drug rehabilitation program in the past and had done well until 2001, at which time she developed a back problem. Because of that problem, she

took painkillers which caused her to relapse into drug use. She began a second drug rehabilitation program and went through the detox portion of the program, but left because the facility in which the program was conducted did not have inpatient beds. At the conclusion of the interview, appellant agreed to a "safety plan" which provided that she would not be alone with the children, that her grandmother would supervise her, that she would cooperate with the Department, and that she would not participate in drug activity.

On October 17, 2002, appellant had another conversation with Ms. Klaehn in which she admitted that her drug use had gotten worse, that she had started using heroin, and that she was still seeing Harold, who continued to have access to the children. She said that her uncle had moved into her home and was living there with her, her children, and her grandmother. She also admitted that her uncle had been "physical" with T.N., and that the uncle and grandmother were being verbally aggressive to the children. That interview resulted in a new signed agreement in which appellant agreed to move the children to her mother's house.

The Department also called Rissy Walker, a Family Preservation Unit caseworker. She was assigned to appellant's case in October 2002, at a time when the children were living with appellant's mother. She averred that during her contacts, the children "frequently" expressed anxiety about a lack of food. Ms. Walker testified that appellant attended and completed inpatient drug therapy for a period but relapsed at the end of December 2002. Appellant also admitted to Ms. Walker that she had used drugs on a weekly basis from December 2002 to March 2003, at which time appellant was visiting with the children at family members' homes. Indeed, Ms. Walker averred, "every time I would

3

see her" from December 2002 through March 2003, appellant would admit she was still using drugs.

Because of appellant's drug use, including methamphetamine and heroin, her visits with the children were required to be at the Department's office and she made visits there from December 2002 through March 2003. During her visitation periods with the children at the Department, her conduct was appropriate. In March of 2003, the Department closed its Family Based Services case. At the time the case was closed, the children were placed with their aunt, Anissa Williams, who had signed a letter of legal responsibility that she would care for the children.

The next witness called by the Department was case worker Amy Gregg, who testified that because of alleged physical neglect and neglectful supervision of the children, she received an intake on May 6, 2003. At that time, the Department did not know where appellant was located. The children were living with their aunt, Anissa Williams, who had stated she could no longer take care of the children. Because no other relative could initially be found who would take the children, they were placed at the Panhandle Assessment Center but were later placed with a paternal great aunt, Marna Moon.

The children's father, Lance Gregory Newell (Newell) was released from prison about the time that the Department took custody of the children. On May 14, 2003, he had a supervised visit with the children. At the time, he told Ms. Gregg that he planned on living with his grandmother in Big Spring and that he hoped to have the children placed with him after he got a job and had everything ready for them. The trial court ordered that Newell submit to a psychological evaluation, a drug and alcohol assessment, parenting classes, counseling, and any drug treatment that might be recommended. He completed the

4

psychological evaluation and received parenting classes and counseling from a pastor in Big Spring. The children were placed with Newell in August 2003, at which time he agreed that appellant would not be allowed to have contact with the children other than supervised visitation at the Department's office. He told Ms. Gregg that appellant was still using drugs and he did not want the children to be around their mother because he thought they had been "through enough."

Although Newell tested positive for marijuana and cocaine use in December 2003, the Department left the children with him. Ms. Gregg said this was done because Newell admitted that the use was a mistake, that it was a "one-time thing" with friends who had come down for the holidays, the children were not with him when it occurred and, she said, because the children had bonded with him. Even so, in March of 2004, because of Newell's continued drug use, including his admission that he had taken the children to see appellant in Amarillo where they both used drugs in the presence of the children, the Department placed the children in an assessment home. They stayed there about 30 days until they were placed with their paternal cousins, Kristie and Steven Haynes. Ms. Gregg averred that the children appeared to be happy with the Haynes and that they seemed to have bonded with them. She further testified that appellant's contacts with the Department had been sporadic and she had failed to cooperate with the Department in setting up and completing a drug rehabilitation plan.

Pam Pollard, another case worker, took over the case from Ms. Gregg in June of 2004. She contacted Newell on June 17, 2004, and scheduled a visit with the children. However, without explanation, Newell failed to show up for the visit. Ms. Pollard said she did not know where appellant was when she was assigned the case and was unable to

locate her until she found her in the Randall County jail on July 6, 2004. Appellant was in jail because of forgery and child endangerment charges. Ms. Pollard went to see her at the jail and was told by her that she wanted to get out of jail, "get clean," and get her children back. Ms. Pollard averred that she asked appellant to contact her when she got out of jail but appellant had not done so. Ms. Pollard said she did not get an address from appellant because appellant was in jail and she did not know how long appellant would be there. Since the jail visit, Ms. Pollard had never heard from appellant and she stated the police were looking for appellant.

Ms. Pollard also testified that the children were "very bonded" with the Haynes and were "doing well." Their behavior had improved, their grades were good, and they wanted to be adopted by the Haynes. She averred they were happy and stable in their placement, were participating in school activities, and she believed it would be in their best interest to remain with the Haynes.

Kristie Lynn Haynes was also presented by the Department. She said that she and her husband have two children, an eight-year-old and a 21-month-old baby. She said the Passmore-Newell children had been living in her household since April 9, 2004 (the bench hearing leading to the termination was held on September 20, 2004). She testified about the fairly drastic changes in behavior in the children since they came to be with the Haynes. She said that she and her husband wanted to adopt the children because "I love them, because I feel like they need permanency" and "[t]hey need to know where they're going to be the rest of their life." She also stated that the children need a home environment in which "they know that they're going to get all the love and affection that they could ever want."

6

Discussion

The natural right existing between a parent and a child is of such a degree as to be of constitutional dimensions. *Santosky v. Kramer*, 455 U.S. 745, 758-759, 102 S.Ct. 1388, 1397-98, 71 L.Ed.2d 599 (1982); *Wiley v. Spratlan*, 543 S.W.2d 349, 352 (Tex. 1976). Because of this, reviewing courts strictly scrutinize termination proceedings. *In re G.M.*, 596 S.W.2d 846 (Tex. 1980). Indeed, a strong presumption exists that the best interest of the child is usually served by maintaining a parent-child relationship. *Id.* at 847. Due process requires that a necessity for termination of parental rights be shown by clear and convincing evidence. *Id.* The clear and convincing standard requires "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. §101.007 (Vernon 2002) (the Code).

In a case that involves parental rights termination such as this one, the reviewing court, considering a legal sufficiency challenge, must look at all the evidence in a light most favorable to the judgment and must assume that the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so. *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). However, that does not mean that the reviewing court must disregard all evidence that does not support the finding because to do so could skew the analysis of whether there is clear and convincing evidence. *Id.* The reviewing court should only sustain a challenge to the legal sufficiency of the evidence when the court determines that no reasonable fact finder could form a firm belief or conviction that the matter that must be proven is true. *Id.*

7

In reviewing a factual sufficiency challenge, the reviewing court must give due consideration to evidence that the fact finder could reasonably have found to be clear and convincing. *Id.* The question, then, is whether the evidence produced is such that a fact finder could reasonably form a firm belief or conviction about the truth of the movant's allegations. *Id.* Therefore, the reviewing court should consider whether disputed evidence is such that a reasonable fact finder could not have resolved that disputed evidence in favor of its finding. *Id.* Thus, if in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that a fact finder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.* If the reviewing court concludes the evidence is factually insufficient, it must detail in its opinion why it concluded that a reasonable fact finder could not have credited the disputed evidence in favor of the finding. *Id.* at 266-67.

To terminate parental rights, the Department must prove by clear and convincing evidence that 1) a parent committed at least one predicate act or omission harmful to the child, and 2) the termination of parental rights is in the child's best interest. Tex. Fam. Code Ann. §161.001 (Vernon Supp. 2005). The clear and convincing standard does not mean that the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. Also, the factfinder, as opposed to the reviewing body, enjoys the right to resolve credibility issues and conflicts within the evidence. It may freely choose to

8

believe all, part, or none of the testimony espoused by any particular witness. *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.–Amarillo 1995, no writ).

In this case, the trial court found that appellant had committed four predicate acts harmful to the children, including a finding that she had engaged in conduct that endangered the physical or emotional well being of the children. In addressing the trial court finding of endangering conduct, appellant argues that although it is not specifically noted, "at some point in the children's lives, . . . the children were exposed to a person who supplied [her]" with drugs. She argues that there are "no references in the record to tie any type of lingering negative behaviors or ill effects to the children caused by" her conduct.

Texas courts have noted that "endanger" means "to expose to loss or injury; to jeopardize." *In re M.C.*, 917 S.W.2d 268, 269 (Tex. 1996)*, quoting Texas Dep't of Human Servs. v. Boyd,* 727 S.W.2d 531, 533 (Tex. 1987). Although "endanger" means more than a threat of metaphysical injury or the possible ill effects of a less-than-ideal environment, it is not necessary that the conduct be directed at the child or that the child actually suffers injury. *Id.* Endangerment of a child does not have to be established as an independent proposition but can be inferred from parental misconduct alone. *Texas Dep't of Human Servs. v. Boyd*, 727 S.W.2d at 533. Indeed, Texas courts look to what the parents did both before and after the child's birth to determine whether termination is necessary. *In re D.M.,* 58 S.W.3d 801, 812 (Tex. App.–Fort Worth 2001, no pet.). Endangerment may include evidence of drug addiction and its effect on a parent's life and his ability to parent. *In re U.P.,* 105 S.W.3d 222, 234 (Tex. App.–Houston [14th Dist.] 2003, pet. denied).

9

A parent's engaging in illegal drug activity after agreeing not to do so in a service plan for reunification with her children is sufficient to establish clear and convincing proof of voluntary, deliberate, and conscious conduct that endangered the well-being of her children. *See Robinson v. Texas Dep't of Protective & Regulatory Servs.*, 89 S.W. 3d 679, 686-87 (Tex. App.–Houston [1st Dist] 2002, no pet.). Conduct that subjects a child to a life of uncertainty and instability because of the probability that its parent or parents will be jailed because of illegal conduct thereby leaving the child alone, endangers the child's physical or emotional well-being. *See In re C.L.C.*, 119 S.W.3d 382, 393 (Tex. App.–Tyler 2003, no pet.).

The evidence in this case, which we have enumerated above in considerable detail, shows that at the time of the initial intake, appellant was living in a car, was not caring properly for her children, and was using illegal drugs. She allowed her children to be around her drug supplier whom she knew was dealing drugs. There was evidence that she and her drug dealer used drugs together around the children and that she supervised the children while under the influence of drugs. Appellant also failed to complete drug rehabilitation programs she had begun, and she continued to engage in illegal drug activity after the Department had become involved and she had agreed she would not do so.

The clear and convincing evidence was amply sufficient to justify the trial court's evident conclusion that appellant's drug addiction and lifestyle had created an aura of uncertainty and instability for her children. In that connection, we note appellant's argument that there are no references to the record to tie any type of lingering negative behavior or ill effects to the children caused by her conduct. However, our supreme court has explicated that the requisite endangerment to a child may be inferred from parental

10

misconduct and it is not necessary that such misconduct be directed at the child or that the child actually suffers injury. *Texas Dep't of Human Servs v. Boyd*, 727 S.W.2d at 533; *see also In re M.J.M.L.,* 31 S.W.3d 347, 353 (Tex. App.–San Antonio 2000, pet. denied).

Even if multiple grounds for termination are alleged, only one predicate finding under section 161.001(1) of the Code is required to terminate parental rights. *In re N.H.*, 122 S.W.3d 391, 401 (Tex. App.–Texarkana 2003, pet. denied). That being so, our finding that sufficient clear and convincing evidence existed to support that finding pretermits the necessity for addressing the remaining statutory grounds for termination found by the trial court.

Even so, in addition to establishing that appellant engaged in endangering conduct, section 161.001 of the Code states that it is also the Department's burden to prove by clear and convincing evidence that the termination of appellant's parental rights was in the children's best interest. Tex. Fam. Code Ann. § 161.001 (Vernon Supp. 2005). In seeking reversal, appellant argues that the evidence is insufficient to sustain the trial court finding that termination of the parent-child relationship between appellant and the children was in the best interest of the children.

In the seminal case of *Holley v. Adams*, 544 S.W.2d 367 (Tex. 1976), the court listed nine identifiable factors among those to be considered in determining the best interest of children in termination cases such as this one. Those factors are the desires of the children, the emotional and physical needs of the children now and in the future, the emotional and physical danger to the children now and in the future, the parental abilities of the individuals seeking custody, the programs available to assist those individuals to

promote the best interests of the children, the plans for the children by the parties seeking custody, the stability of the home or proposed placement, the acts or omissions committed by the parent that might indicate that the existing parent-child relationship is not a proper one, and any excuses for the acts or omissions committed by the parent. *Id.* at 372.

As the court indicated in its opinion, that list is by no means exhaustive but is a very good point of reference to aid in assessing the trial courts' rulings. Evidence proving one or more statutory ground for termination may be considered in assessing the probative evidence that termination is in the best interest of the children. *In re C.H.,* 89 S.W.3d 17, 28 (Tex. 2002). Additionally, a best-interest analysis may consider circumstantial evidence, subjective factors, and the totality of the evidence as well as the direct evidence. *In re S.H.A.,* 728 S.W.2d 73, 86-87 (Tex. App.–Dallas 1987, writ ref'd n.r.e.). A parent's unstable lifestyle, lack of income, and lack of a home may also be considered in a determination of a parent's ability to provide for a child's emotional and physical needs and may also threaten the physical well being of the child. *In re C.A.J.,* 122 S.W.3d 888, 894 (Tex. App.–Fort Worth 2003, no pet.).

In regard to the desires of the children, Ms. Gregg testified that the children were happy about being placed with Mr. and Mrs. Haynes and that the children appeared to bond with the couple. Indeed, Ms. Pollard averred that from her observations of the children in the Haynes' home, the children were very bonded, were happy, and were doing well.

With regard to the emotional and physical needs of the children now and in the future and the emotional and physical danger to them now and in the future, the evidence

is sufficient to sustain a trial court belief that appellant's drug history clearly posed an emotional and physical danger to the children. The evidence supports a conclusion that appellant's relapse after repeated drug treatment programs is also something to be validly considered as bearing upon the question of potential emotional and physical danger to the children. In that connection, Ms. Pollard testified that in July of 2004, when she found appellant in the Randall County jail, almost two full years after the Department first investigated her because of her drug use, she still was not free from her drug addiction and still admitting her desire to "get clean" from her drug addiction. As a fact finder, the trial judge could have reasonably concluded that the likelihood of appellant continuing drug use was very strong.

Suffice it to say, under the clear and convincing evidence in this case, the trial judge could reasonably conclude that appellant was not stable emotionally and could not meet the emotional and physical needs of the children either in the present or in the future. Additionally, the evidence would support a conclusion that appellant's drug use and demonstrated association with other drug users would constitute a danger emotionally and physically both in the present and in the future. A trier of fact may measure a parent's future conduct by her past conduct and determine that it is in the child's best interest to terminate parental rights. *In re D.L.N.,* 958 S.W.2d 934, 941 (Tex. App.–Waco 1997, pet. denied), *overruled on other grounds by In re C.H.,* 89 S.W.3d 17 (Tex. 2002).

In considering whether the evidence is sufficient to sustain the termination of her parental rights, appellant suggests that *Horvatich v. Texas Dep't of Protective & Regulatory Servs*, 78 S.W.3d 594 (Tex. App.–Austin 2002, no pet.) is a "very good case to guide this

Court in reviewing the record," and in determining whether the evidence in this case is sufficient to justify the termination of her parental rights. In *Horvatich*, the court found the evidence was not sufficient to sustain the termination of a mother's parental rights. However, in doing so, the appellate court noted there was no testimony from anyone who had personal knowledge of the children at the time of trial and that there was no testimony concerning how the children were doing in foster care, whether they were being considered for adoption, the likelihood of their adoption, the Department's plan for placement of the children, whether the children were currently together in their foster care, and whether the Department would attempt to place all three children together. *Id.* at 601-02.

The evidence in the *Horvatich* case is different from that in this record. Here, Ms. Pollard, the caseworker at the time of trial, and Mrs. Haynes, the children's current foster placement person, had personal knowledge of the children at the time of trial. Both of them testified that the children were happy in their placement, that they had bonded with the foster parents, they were stable in their placement, and that they wanted to be adopted by the Haynes. Mrs Haynes testified about the children's activities and the improvement in their attitude since they came to the Haynes. The children were together with the Haynes, the Haynes wanted to adopt the children and the Department's plan was to facilitate that adoption.

Suffice it to say, the evidence before the trial court was sufficiently clear and convincing to justify its decision. Accordingly, appellant's point is overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice

14