

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00091-CV

IN THE INTEREST OF D.G. AND A.G., CHILDREN

On Appeal from the 140th District Court
Lubbock County, Texas
Trial Court No. 2016-520,233, Honorable Kara L. Darnell, Associate Judge Presiding

July 31, 2019

## MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and PARKER, JJ.

"Val"[1] appeals the trial court's order terminating her parental rights to her children, "D.G." and "A.G." Appointed counsel for Val has filed an *Anders*[2] brief in support of a motion to withdraw. Finding no arguable grounds for appeal, we affirm the judgment of the trial court.

---

[1] To protect the privacy of the parties involved, we will refer to the appellant mother as "Val," the father of the children as "Larry," and the children the subject of this appeal as "D.G." and "A.G." *See* Tex. Fam. Code Ann. § 109.002(d) (West Supp. 2018); Tex. R. App. P. 9.8(b). Larry's parental rights were also terminated in this proceeding, but he did not appeal.

[2] *See Anders v. California*, 386 U.S. 738, 87 S. Ct. 1396, 18 L. Ed. 2d 493 (1967).

## Background

In 2016, the Texas Department of Family and Protective Services became involved with D.G. and A.G. due to allegations that Val allowed her sixteen-year-old boyfriend to have sex with one of her other children. As a result of that investigation, the Department placed D.G. and A.G. with Larry and he filed suit for custody. Ultimately, in August of 2017, Larry and Val were appointed as joint managing conservators of D.G. and A.G. Larry was designated as the conservator with the right to determine the primary residence of D.G. and A.G., while Val was ordered to pay child support and given a standard possession order.

In February 2018, the Department became involved once again. This time, the allegations alleged the neglectful supervision of D.G. and A.G. by Larry. It was reported that Larry and his sister smoked crack cocaine in a closed bedroom while D.G. and A.G. were in the living room. It was also reported that Larry was selling his food stamps and that D.G. and A.G. "looked like orphans." During the Department's investigation, Larry admitted to illegal drug use and tested positive for methamphetamine and cocaine. Val has had minimal contact with D.G. and A.G. since the sexual abuse allegations were investigated in 2016, and the Department was unable to locate her. D.G. and A.G. were removed from Larry's care and placed with their paternal grandparents.

In April, the Department filed its petition for protection, conservatorship, and termination of the parental rights of Val and Larry and scheduled an adversary hearing. Val did not appear at the hearing and did not participate in the case.

The Department developed a family service plan for Val and, over the next several months, continued its efforts to locate Val. Department caseworker Dominica Castillo testified that she located two possible addresses for Val from previous Department investigations. In April, Castillo went to an address at 1118 66th Street where Val had lived with her mother. A lady answered the door and told Castillo that Val did not live there. In May and June, Castillo went to 5525 4th Street, Apartment #12, but no one answered the door. Castillo called a telephone number for Val and left a voicemail message informing Val of Castillo's role in the case and requesting that Val contact her. Later, Val called the Department and left a voicemail message for Castillo. Castillo returned the call, but Val did not answer the phone.

Castillo sent certified and non-certified letters to the 4th Street address in July, August, and September. None of these letters were returned. The Department provided both of these addresses to the Lubbock County Sheriff's Office, but their attempts to serve Val at the 4th Street and 66th Street locations were not successful.

In August, Castillo learned that Val recently used the 4th Street address when she renewed her Medicaid and food stamps. The Department, once again, gave this address to the Sheriff's office, but service on Val was unsuccessful.

The paternal grandmother gave Castillo information that Val was working at the Murphy USA gas station on 4th Street and that address was also provided to the Sheriff's office, but they were not able to serve her at that address. In September, Castillo sent a letter to Val at the 4th Street address enclosing Val's plan of service and to let Val know that she would be receiving a new caseworker, Ke'Ondra Heckard.

Heckard also testified to her efforts to locate Val. Heckard called Murphy USA but no one would confirm that Val worked there. Heckard also called the phone number the Department had for Val and drove to the apartment on 4th Street, but no one answered the door.

After four attempts at personal service, the Department decided to serve Val by publication. Heckard prepared an affidavit detailing the diligence used to locate Val. Based on this affidavit, the trial court authorized service by publication and appointed an attorney ad litem to represent Val.

A bench trial was held on February 7, 2019. Val did not appear.

At the time of trial, D.G. and A.G. had been placed with their paternal grandparents since they had been removed from Larry in February 2018. The children were doing well in school and they had bonded with their grandparents. Castillo testified that D.G., almost ten years old, and A.G., six years old, were doing well in their placement. Castillo recommended that termination would be in D.G. and A.G.'s best interest because Val had not had a relationship with the children "for a few years now," and given the history that Val has had with the Department. Additionally, she stated that the Department's plan was to be named the permanent managing conservator and for the children to be adopted by their paternal grandparents.

Based upon the evidence that Val had no contact with the children in over a year; the Department had made reasonable efforts to return the children to her; she had not regularly visited or maintained significant contact with the children; and she failed to demonstrate any ability to provide the children with a safe environment, the trial court

4

found by clear and convincing evidence that Val constructively abandoned the children while they were in the Department's care for more than six months. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(N) (West Supp. 2018).[3] In addition, the trial court found by clear and convincing evidence that Val failed to comply with the provisions of a court order that specifically established the actions necessary for her to obtain the return of the children who had been under the Department's supervision for in excess of nine months as a result of the children's removal for abuse or neglect. § 161.001(b)(1)(O). The trial court also found that termination was in the best interest of D.G. and A.G. *See* § 161.001(b)(2). The court appointed the Department as the permanent managing conservator of D.G. and A.G.

On March 5, 2019, Val filed an application for appointment of attorney and affidavit of indigence. That same day, the court appointed an appellate attorney for Val and this appeal ensued.

Analysis

The Texas Family Code permits a court to terminate the parent-child relationship if the Department establishes (1) one or more acts or omission enumerated under section 161.001(b)(1), and (2) termination of that relationship is in the child's best interest. § 161.001(b)(1), (2); *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.*, 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.) (only one predicate finding under section

---

[3] Further references to provisions of the Texas Family Code will be by reference to "section __" or "§ __."

161.001(b)(1) is necessary to support termination when there is also a finding that termination is in the child's best interest).

Due process requires that termination of parental rights be supported by clear and convincing evidence. *In re E.M.E.*, 234 S.W.3d 71, 72 (Tex. App.—El Paso 2007, no pet.) (citing *In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002)). This standard falls between the civil preponderance of the evidence standard and the reasonable doubt standard of criminal proceedings. *Id.* at 73. Clear and convincing evidence is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." § 101.007 (West 2019).

Reviewing the legal sufficiency of the evidence supporting parental termination requires us to review "all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d at 266. In a factual sufficiency review, we are to determine whether, on the entire record, a factfinder could reasonably form a firm conviction or belief about the truth of the matter on which the movant bore the burden of proof. *In re C.H.*, 89 S.W.3d 17, 28-29 (Tex. 2002); *In re T.B.D.*, 223 S.W.3d 515, 517 (Tex. App.—Amarillo 2006, no pet.).

Pursuant to *Anders*, Val's court-appointed appellate counsel has filed a brief certifying that he has diligently searched the record and has concluded that the record reflects no arguably reversible error that would support an appeal. *In re Schulman*, 252 S.W.3d 403, 406 n.9 (Tex. Crim. App. 2008) (orig. proceeding); *Porter v. Tex. Dep't of Protective & Regulatory Servs.*, 105 S.W.3d 52, 56 (Tex. App.—Corpus Christi 2003, no

pet.) ("[W]hen appointed counsel represents an indigent client in a parental termination appeal and concludes that there are no non-frivolous issues for appeal, counsel may file an *Anders*-type brief"); *In re L.J.*, No. 07-14-00319-CV, 2015 Tex. App. LEXIS 427, at *2-3 (Tex. App.—Amarillo Jan. 15, 2015, no pet.) (mem. op.) (same).

Counsel certifies that he has diligently researched the law applicable to the facts and issues and discusses why, in his professional opinion, the appeal is frivolous. *In re D.A.S.*, 973 S.W.2d 296, 297 (Tex. 1998) (orig. proceeding). The brief contains an analysis of a potential issue with an explanation why counsel believes the issue is meritless. Counsel has complied with the requirements of *Anders* by providing a copy of the brief, motion to withdraw, and appellate record to Val, and notifying her of her right to file a pro se response if she desired to do so. *Id.*; *Kelly v. State*, 436 S.W.3d 313, 319-20 (Tex. Crim. App. 2014); *In re L.V.*, No. 07-15-00315-CV, 2015 Tex. App. LEXIS 11607, at *2-3 (Tex. App.—Amarillo Nov. 9, 2015) (order) (per curiam). Val has not filed a response.

As in a criminal case, we have independently examined the entire record to determine whether there is a non-frivolous issue that might support the appeal. *See Penson v. Ohio*, 488 U.S. 75, 82-83, 109 S. Ct. 346, 102 L. Ed. 2d 300 (1988); *Stafford v. State*, 813 S.W.2d 503, 511 (Tex. Crim. App. 1991). Based on this record, we conclude that a reasonable factfinder could have formed a firm belief or conviction that grounds for termination existed and that termination of Val's parental rights was in the best interest of D.G. and A.G. *See In re A.V.*, 113 S.W.3d at 362; *In re T.N.*, 180 S.W.3d at 384. After reviewing the record and the *Anders* brief, we agree with counsel that there are no plausible grounds for reversal.

Accordingly, the trial court's order terminating Val's parental rights to D.G. and A.G. is affirmed.[4]

Judy C. Parker
Justice

---

[4] We call counsel's attention to the continuing duty of representation through the exhaustion of proceedings, which may include the filing of a petition for review. Counsel has filed a motion to withdraw, on which we will take no action. *In re P.M.*, 520 S.W.3d 24, 27 (Tex. 2016) (per curiam).