

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-19-00403-CV

IN THE INTEREST OF A.R., A CHILD

On Appeal from the 286th District Court
Hockley County, Texas
Trial Court No. 17-09-25164, Honorable Pat Phelan, Presiding

March 26, 2020

MEMORANDUM OPINION

Before QUINN, C.J., and PIRTLE and DOSS, JJ.

Appellant, R.T. (the father), appeals the trial court's final order terminating his parental rights to his son, A.R.[1]  Appellee is the Texas Department of Family and Protective Services.  Through a single issue, the father argues the evidence is legally or

---

[1] To protect the child's privacy, we will refer to R.T. as "the father," the child's mother, T.R., as "the mother," and the child by initials.  See TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2019); TEX. R. APP. P. 9.8(b).  The parental rights of the mother were terminated by an earlier order of the trial court.

factually insufficient to support the trial court's two predicate-ground findings and its best-interest finding.[2]  We overrule the father's issue and affirm the judgment.[3]

## Background

The Department's case was largely presented before the associate judge of the referring court.  The father requested, and was granted, a trial de novo before the referring court.  That court heard the testimony of one witness and took into consideration the transcript from the initial hearing.  The father is a prison inmate.  He was represented by court-appointed counsel in the proceedings before the associate judge and the referring court but did not personally appear in the courtroom nor did he offer testimony via telephone, deposition, or affidavit.

The mother was called as a witness by the Department.  According to her testimony, she met the father in 2013.  Thereafter, he was "locked up for two and a half years" before being released in August 2016.  From January through March 2017, the mother and the father used methamphetamine together.  During this time, the mother was pregnant with A.R.; the father knew of the pregnancy, but smoked methamphetamine in her presence anyway.  According to the mother, the father failed to maintain sobriety or abstain from drugs except for one month and during periods when he was incarcerated.  She described the father as "[r]eally physically abusive" toward her, and that the father would strike her in the stomach and on the head.

---

[2] *See* TEX. FAM. CODE ANN. § 161.001(b)(1) (N) (constructive abandonment), (O) (failed to comply with a court order), and (2) (best interest) (West Supp. 2019).

[3] The present appeal follows a second final hearing of the Department's case against the father. *See In re A. R.,* No. 07-18-00350-CV, 2019 Tex. App. LEXIS 524 (Tex. App.—Amarillo Jan. 28, 2019, no pet.) (mem. op.) (reversing judgment and remanding for a new trial).

A.R. was born September 11, 2017. The mother testified that when A.R. was born, she notified the father and asked him to move to Texas to be a part of the child's life, but the father never came. Though the evidence suggests that the father may have lived in Michigan during a part of the time and could not return to Texas due to his parole status, testimony also shows the father "was clearly on the run" – the father came to Texas when "on the run," but not for A.R.'s birth.

When A.R. was born, both the mother and A.R. tested positive for methamphetamines and amphetamines. In October 2017, the Department was appointed A.R.'s temporary managing conservator; A.R. was placed with his aunt and uncle. He remained in their care through the time of final hearing. In final hearing testimony, the Department caseworker indicated that A.R. was a happy child and was "thriving" in the placement.

The father told the Department that he wanted to be part of A.R.'s life and would comply with a service plan if paternity testing established him as A.R.'s father. The father was adjudicated A.R.'s father by order signed April 3, 2018. From September 2017 through the spring of 2018, the Department's caseworker mailed correspondence, two service plans, and "other court reports" to the father at his address in Michigan. In addition, the caseworker communicated with the father by telephone or text message. The caseworker agreed she felt "certain" she reviewed the requirements of the service plan with the father.

A service plan prepared after the April 3 paternity order required, among other things, the father's participation in a drug and alcohol assessment, payment of child and

medical support, announced and unannounced home visitation, monthly contact with the caseworker, a legal source of income, attendance at supervised child visitation, and participation in individual counseling. The caseworker testified she transmitted the second service plan to the father with an accompanying letter.

In June 2018 the father was convicted in Michigan of "drug charges and assault with obstruction of a police officer" and sentenced to ten years' confinement. His parole eligibility date is March 26, 2023. When the caseworker learned of the father's incarceration in July 2018, she sent him letters instructing him to participate in any services offered in prison. She also sent the father a "parenting packet" that contained multiple lessons in childcare. The father completed the parenting lessons; in August, he wrote a letter to the caseworker expressing his desire to return to Texas and "make a difference in his child's life."

Although the caseworker sent a letter to the father each month, she only received one letter and the father's packet of parenting classes. The caseworker testified she believed she spoke with the father only five times since 2018, and one of these conversations was during the month preceding final hearing. The evidence showed the father never met A.R., did not write A.R., and did not speak with A.R. by telephone. In the caseworker's opinion, the father had no relationship with A.R. The father never offered an alternative placement for A.R.; he agreed with placement with the child's maternal aunt and uncle during pendency of the case.

Following the de novo hearing, the referring court signed a final order terminating the father's parental rights based on findings that he violated predicate grounds (N) and (O) and termination was in the best interest of A.R.

Analysis

Through a single issue, the father argues the evidence was legally or factually insufficient to support the trial court's two predicate ground findings and its finding that termination of his parental rights was in the best interest of A.R. The Constitution protects "[t]he fundamental liberty interest of natural parents in the care, custody, and management" of their children. *Santosky v. Kramer,* 455 U.S. 745, 753, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982); *Holick v. Smith,* 685 S.W.2d 18, 20 (Tex. 1985). Parental rights, however, are not absolute, and courts have recognized it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve the parental rights. *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 of the Texas Family Code require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002). "Clear and convincing evidence" is that "measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *In re N.G.,* 577 S.W.3d 230, 235 (Tex. 2019) (per curiam) (quoting TEX. FAM. CODE ANN. § 101.007).

The Family Code permits a trial court to terminate parental rights if the movant proves by clear and convincing evidence that the parent committed an action prohibited

under section 161.001(b)(1) and termination is in the child's best interest.  TEX. FAM. CODE ANN. § 161.001(b)(1),(2); *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976).  Only one predicate finding under section 161.001(b)(1) is necessary to support an order of termination when there is also a finding that termination is in a child's best interest.  *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003); *In re T.N.,* 180 S.W.3d 376, 384 (Tex. App.—Amarillo 2005, no pet.).  Thus a termination order may be affirmed if it is supported by legally and factually sufficient evidence of any statutory ground on which the trial court relied for termination, and the best-interest finding.  *In re E.A.G.,* 373 S.W.3d 129, 141 (Tex. App.—San Antonio 2012, pet. denied).

Under the legal sufficiency analysis, we examine all the evidence in the light most favorable to the challenged finding, assuming the "factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so."  *In re J.F.C.,* 96 S.W.3d at 266.  We disregard all contrary evidence the factfinder could have reasonably disbelieved or found incredible.  *Id.*  However, we take into account undisputed facts that do not support the finding, so as not to "skew the analysis of whether there is clear and convincing evidence."  *Id.*  If the record presents credibility issues, we must defer to the factfinder's determinations provided they are not unreasonable.  *In re J.P.B.,* 180 S.W.3d 570, 573 (Tex. 2005).

In a factual sufficiency review, a court of appeals must give due consideration to the evidence the factfinder reasonably could have found to be clear and convincing.  *In re C.H.,* 89 S.W.3d at 25.  We determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations.  *Id.*  In doing so we consider whether disputed evidence is such that a

reasonable factfinder could not have resolved that disputed evidence in favor of its finding. *Id.* If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *In re J.F.C.,* 96 S.W.3d at 266.

Predicate Ground Finding

*Constructive Abandonment, § 161.001(b)(1)(N)*:

A parent constructively abandons a child when (1) the child has been in the permanent or temporary managing conservatorship of the State or an authorized agency for not less than six months, (2) the State or the authorized agency has made reasonable efforts to return the child to the parent, (3) the parent has not regularly visited or maintained significant contact with the child, and (4) the parent has demonstrated an inability to provide the child with a safe environment. TEX. FAM. CODE ANN. § 161.001(b)(1)(N); *In re M.R.,* No. 07-13-00440-CV, 2014 Tex. App. LEXIS 6220, at *7 (Tex. App.—Amarillo June 9, 2014, no pet.) (mem. op.). While the singular circumstance of imprisonment does not establish constructive abandonment, subsection (N) can be applied to incarcerated parents. *In re M.D.P.,* No. 11-18-00146-CV, 2018 Tex. App. LEXIS 9457, at *6-7 (Tex. App.—Eastland Nov. 20, 2018, no pet.) (mem. op.) (citing *In re A.H.,* No. 02-12-00444-CV, 2013 Tex. App. LEXIS 3104 (Tex. App.—Fort Worth Mar. 21, 2013, no pet.) (mem. op.); *In re D.S.A.,* 113 S.W.3d 567, 573-74 (Tex. App.—Amarillo 2003, no pet.)).

We discern the father's argument on appeal to be that the evidence is insufficient to prove the second and third prongs, *viz.*, the Department made reasonable efforts to return A.R. to the father and because of incarceration the father was unable to regularly visit or maintain significant contact with A.R. It is self-evident that a child cannot be placed with his parent in a prison cell. Implementation of a service plan by the Department may be considered a reasonable effort to return a child to his parent. *In re N.R.T.,* 338 S.W.3d 667, 674 (Tex. App.—Amarillo 2011, no pet.). Here, though, the evidence does not show the degree of implementation of service plan terms typically seen in cases in which the Department relies on a service plan for its reasonable efforts. *See In re K.C.,* No. 07-18-00282-CV, 2018 Tex. App. LEXIS 10774, at *8 (Tex. App.—Amarillo Dec. 21, 2018, pet. denied) (mem. op.) (so stating).

Implementation of a service plan, however, is not the only means by which the Department can demonstrate reasonable efforts to return a child to a parent for purposes of satisfying subsection (N). *In re K.J.T.M.,* No. 06-09-00104-CV, 2010 Tex. App. LEXIS 3057, at *13 n.12 (Tex. App.—Texarkana Apr. 27, 2010, no pet.) (mem. op.) (describing the reasonableness of the Department's return efforts to be a "sliding scale, depending on the situation"). The record shows the Department's efforts to encourage the father toward responsible parenthood. In addition to the caseworker's instruction that the father should participate in services offered in prison, she sent him a "parenting packet" containing lessons in childcare. The caseworker also communicated with the father by sending him a letter each month and spoke with him by telephone five times. After reviewing the entire record, we conclude the trial court's finding that the Department made reasonable efforts to return A.R. to the father is supported by legally sufficient evidence.

*See In re K.M.L.,* 443 S.W.3d 101, 112-13, 116 (Tex. 2014) (legal sufficiency standard). Likewise, when assessed in a neutral light we conclude this finding was factually sufficient. *See In re A.B.,* 437 S.W.3d 498, 502-03 (Tex. 2014) (factual sufficiency standard).

With regard to the element that the father has not regularly visited or maintained significant contact with the child, the father appears to contend that incarceration somehow excused him from visiting or maintaining contact with A.R. The father does not direct us to any authority for the position. Nevertheless, the record reflects that the father took no steps to reach out to his son, either before or after incarceration. He neither wrote nor called A.R. The caseworker opined without objection that the father had no relationship with A.R. We conclude the evidence supporting the trial court's finding that the father has not regularly visited or maintained significant contact with A.R. is supported by legally and factually sufficient evidence. Because parental rights may be terminated on only one predicate-ground finding when coupled with a best-interest finding, our review of the father's subsection (O) challenge is not necessary for the disposition of this appeal. *See* TEX. R. APP. P. 47.1. We turn then to whether termination of the parent-child relationship was in the best interest of A.R.

Best Interest Finding

To assess the trial court's best-interest determination, we may consider the factors itemized in *Holley v. Adams,* 544 S.W.2d 367 (Tex. 1976).[4] While the *Holley* "listing is by

---

[4] The *Holley* factors are: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency

no means exhaustive, [it] does indicate a number of considerations which either have been or would appear to be pertinent." *Holley,* 544 S.W.2d at 372.[5] "The absence of evidence about some of these considerations would not preclude a fact-finder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child." *In re C.H.,* 89 S.W.3d at 27. In some circumstances, evidence of even one *Holley* factor may be sufficient. *Jordan v. Dossey,* 325 S.W.3d 700, 729 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (citing *In re C.H.*, 89 S.W.3d at 27).

Much of the evidence relevant to the predicate ground finding is also relevant to the best-interest determination. *See In re F.R.,* No. 07-19-00215-CV, 2019 Tex. App. LEXIS 9670, at *10 (Tex. App.—Amarillo Nov. 4, 2019, no pet.) (mem. op.) (noting evidence supportive of (D) ground finding was also relevant to best-interest determination). Based on a convicting offense the caseworker described as "drug charges and assault with obstruction of a police officer," the father will not become parole eligible until 2023. Until released, he will remain incarcerated in a Michigan facility. The father has not met A.R. and has no relationship with him.

---

seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley,* 544 S.W.2d at 371-72.

[5] *See In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (per curiam) (citing Family Code section 263.307 ["Factors in Determining Best Interest of Child"] and *Holley* as providing factors for consideration "when determining whether termination of parental rights is in the best interest of the child" and also referencing Family Code section 153.131(b) which provides "a strong presumption that the best interest of a child is served by keeping the child with a parent").

Moreover, the father presented no plans for developing a healthy relationship with, and properly caring for, his son. He did not offer an alternative placement and agreed with the Department's relative placement during pendency of the case. The father paid no child support, nor was there evidence he paid anything toward the care of A.R. Further, the trial court heard testimony of the father's past drug usage, criminal conduct, lack of sobriety, and abusive treatment of the mother. In conjunction with the best-interest determination, we have noted a parent's past endangering conduct is often prologue. *In re A.M.,* Nos. 07-18-00047-CV, 07-18-00048-CV, 2018 Tex. App. LEXIS 3688, at *7 (Tex. App.—Amarillo May 23, 2018, pet. denied) (per curiam, mem. op.) (citation omitted). A.R. is thriving in his relative placement with the prospect of adoption on termination of the father's parental rights. We conclude the trial court's best-interest finding is supported by legally and factually sufficient evidence.

Because sufficient evidence supports the trial court's subsection (N) and best-interest findings, we overrule the father's issue on appeal.

Conclusion

Having resolved the father's issue against him, we affirm the judgment of the trial court.

Lawrence M. Doss
Justice

11