

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

---

No. 07-23-00422-CV

---

## IN THE INTEREST OF K.G., A CHILD

---

On Appeal from the 72nd District Court
Lubbock County, Texas
Trial Court No. 2020-540,553, Honorable J. Phillip Hays, Presiding

---

February 28, 2024

## MEMORANDUM OPINION

Before QUINN, C.J. and PARKER and DOSS, JJ.

Appellant TG appeals the trial court's judgment by which her parental relationship with daughter KG was terminated. TG maintains the record failed to prove one of the two predicate grounds for termination and that it also failed to prove KG's best interest was served by termination of the parent-child relationship. We affirm.

### Background

TG gave birth to KG in 2018. TG's husband, who has since passed away, was not the biological father of KG. Instead, the biological father was a family friend, Charles, known to TG at the time to be a registered sex offender. Shortly after TG's husband

passed in 2021, the Department became involved based on allegations of neglectful supervision.

The record indicates that, for a number of years, both before and after KG's birth, TG abused prescription painkillers and other controlled substances, such as Xanax and marijuana. In 2017, she pleaded guilty to possession of a controlled substance and was placed on three years deferred adjudication community supervision. Her community supervision was extended three times, two of those extensions having been designed to allow her extra time to pay fees and fines.

TG regularly left KG in the care of Charles and his wife, A.H., despite TG's knowing Charles's criminal history. KG would later made outcries of sexual abuse against Charles. KG's therapist testified that based on KG's account and her behavior, including night terrors and violent outbursts, and other signs of trauma, she had "no doubts" that sexual abuse did occur. She added that KG suffered from a form of post-traumatic stress disorder brought about by the sexual abuse, the recent passing of the man she believed to be her father, removal from her mother's care, and brief stay in another foster home prior to her current placement.

Charles was arrested on charges of sexually abusing KG and ultimately signed a relinquishment of his parental rights. TG expressed an interest in helping Charles regain his parental rights, however.

We learn that TG and KG's life was unstable in terms of TG's sporadic employment, continuing pattern of criminal conduct, and inability to maintain a stable residence. KG was placed in foster care. Thereafter, TG was arrested in the summer of 2023 for theft and remained incarcerated at the time of trial.

2

At the time the final hearing was held, KG was four years old and was living in a foster home with foster parents who have fully committed to caring for her and addressing the mental health issues with which she struggled upon her placement in the home. The foster parents express their firm intent on adopting KG in the event TG's parental rights are terminated.

At the close of the evidence, the trial court found clear and convincing evidence supported termination of TG's parental rights pursuant to subsections (E) and (O) of § 161.001(b)(1) of the Texas Family Code. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E), (O). It further found, by clear and convincing evidence, that termination of mother's rights was in KG's best interest. *See id.* § 161.001(b)(2).

### Standards of Review

The standards for reviewing the legal and factual sufficiency of the evidence in termination cases are well-established and described most recently in *In re J.F.-G.*, 627 S.W.3d 304 (Tex. 2021). We apply them here.

### Issue 1—Predicate Grounds

Unchallenged predicate findings are binding on the reviewing court unless the contrary is established as a matter of law or there is no evidence to support the finding. *See In re E.E.*, 678 S.W.3d 370, 373 n.2 (Tex. App.—Amarillo 2023, pet. denied) (citing *In re R.A.W.*, No. 07-13-00316-CV, 2015 Tex. App. LEXIS 3039, at *17 (Tex. App.—Amarillo Mar. 27, 2015, no pet.) (mem. op.)). Here, TG does not challenge the trial court's predicate finding under subsection (O), meaning that said finding is binding on this court. Indeed, the record supports a finding by clear and convincing evidence that TG failed to comply with the provisions of a court order that specifically established the actions

3

necessary for her to obtain the return of KG. Such a finding would support termination, assuming the trial court also properly found that termination was in the child's best interest.

However, in light of the nature of the rights involved and ramifications of termination under subsection (E), we review TG's issue concerning the sufficiency of the evidence to support the trial court's finding that clear and convincing evidence supports a finding under subsection (E). *See In re N.G.*, 577 S.W.3d 230, 237 (Tex. 2019) (per curiam); *see also* TEX. FAM. CODE. ANN. § 161.001(b)(1)(M) (permitting subsequent termination if same occurred earlier under (D) or (E) as to another child).

We will affirm a finding under subsection (E) if clear and convincing evidence shows that the parent engaged in conduct or knowingly placed the child with persons who engaged in conduct endangering the child's physical or emotional well-being. *See* TEX. FAM. CODE ANN. § 161.001(b)(1)(E); *In re E.E.*, 678 S.W.3d 370, 373 (Tex. App.—Amarillo 2023, pet. denied). Endangering conduct under (E) need not occur in the presence of the child; endangering conduct may occur prior to the birth of the child and may include what a parent does both before and after the Department has removed the child from the parent's care. *See In re T.N.*, 180 S.W.3d 376, 383 (Tex. App.—Amarillo 2005, no pet.).

Using illegal controlled substances impairs the ability to properly care and supervise a child. *In re J.W.*, No. 07-23-00290-CV, 2023 Tex. App. LEXIS 8455, at *3-4 (Tex. App.—Amarillo Nov. 8, 2023, no pet.) (mem. op.); *see In re J.O.A.*, 283 S.W.3d 336, 345 (Tex. 2009). So too does it endanger the child's emotional and physical well-being. *Id.* Thus, evidence that TG continually abused prescription and nonprescription drugs supports the trial court's finding that her conduct ran afoul of subsection (E). Likewise,

4

evidence of a parent's criminal conduct, convictions, or imprisonment is evidence of endangering conduct. *See In re E.E.*, 678 S.W.3d at 373; *In re A.W.T.*, 61 S.W.3d 87, 98 (Tex. App.—Amarillo 2001, no pet.).

T.G.'s disregard of the known risk posed by Charles to KG and her having regularly allowed KG to be in his care despite knowing his past criminal history of child sex abuse also represents endangering conduct. *See In re C.T.*, No. 12-09-00401-CV, 2010 Tex. App. LEXIS 9451, at *21 (Tex. App.—Tyler Nov. 30, 2010, no pet.) (mem. op.); *see also In re L.C.*, 145 S.W.3d 790, 797 (Tex. App.—Texarkana 2004, no pet.) ("Placement with an abusive parent or relative is endangerment under subsection . . . (E)."). Further, her apparent disbelief and/or continued reliance on the relationship between Charles and KG is conduct dangerous to KG's physical and emotional well-being. *See In re C.T.*, 2010 Tex. App. LEXIS 9451, at *22. The fact that she advocated for his regaining parental rights to KG also demonstrates conduct that endangers KG's physical and emotional well-being. *See id*. Her conduct in this regard represents a clear failure to protect her daughter and a disregard of the child's safety by leaving her in the care of a man she knew to have a history of child abuse.[1] TG even acknowledged the risk to some degree when she explained why she never left KG alone with Charles without Charles's wife also being there: "I just didn't let my daughter just go with anybody." Evidence of TG's having promoted "regular contact" with Charles is certainly evidence probative to subsection (E)'s predicate grounds.

---

[1] Following K.G.'s removal and while T.G. remained incarcerated, she began a relationship with another man whose criminal history includes allegations of sexual abuse of a child. Her therapist noted her pattern of choosing abusive partners.

Finally, TG's failure to complete court-ordered services may be considered evidence of endangering conduct. *See In re E.E.*, 678 S.W.3d at 373; *see also A.S. v. Tex. Dep't of Family & Protective Servs.*, 394 S.W.3d 703, 712 (Tex. App.—El Paso 2012, no pet.) ("The parent-child relationship, and efforts to improve or enhance parenting skills, are relevant in determining whether a parent's conduct results in endangerment under subsection (E)."). While TG did complete some of the ordered services, she failed to complete others. She ultimately failed to achieve any meaningful improvement in terms of parenting or life skills, per her therapist. While she admitted having used painkillers, Xanax, and marijuana for years, she refused to accept that she had a problem.

The trial court's finding that clear and convincing evidence supported termination under subsection (E) is supported by legally and factually sufficient evidence. The evidence described above allowed a reasonable factfinder to form a firm belief or conviction that TG 1) engaged in conduct that endangered KG's physical and emotional well-being and 2) knowingly left KG in the care of others who likewise endangered her. We overrule TG's first issue.

### Issue 2—Best Interest

TG also challenges the trial court's finding that termination of the parent-child relationship was in KG's best interest. We note that the above-referenced evidence is one of many factors also relevant to determinations of a child's best interest. *See In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002) (stating that evidence establishing a statutory ground for termination may also be probative when determining the child's best interest); *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1976); *see also* TEX. FAM. CODE ANN. § 263.307(b) (providing a list of factors to consider when determining a child's best interest).

6

A mother's choice to leave her child in the care of a person she knows to have been convicted of child sexual abuse is a poor parenting choice, at a minimum, and is relevant to the consideration of TG's parenting skills. She has continued to make poor choices as well, as exemplified by her becoming involved with another man who allegedly has a history of child sexual abuse. Further, though programs to improve her life skills and parenting skills were made available to her, she refused to take advantage of them and instead insisted that she did not have a problem with substance abuse or life choices.

In contrast, the foster parents consistently communicate with KG's counselor and work diligently on ways to help her with her physical and mental health concerns. Both the Department staff and the counselor predict the foster family's dedication will continue to help KG as she grows. Notably, the foster parents voiced their grave concerns when they learned that TG was still in contact with Charles and noted their objections to Charles having any contact with KG. While it appears that TG has finally come to terms with Charles being a danger to KG and has finally abandoned her efforts to reinstate the parental rights Charles voluntarily relinquished, it appears that her change is far too late to make any direct improvements in KG's life. The foster parents, rather, have taken it upon themselves to ensure KG's safety and healthy development.

Indeed, KG came to her current foster home a very troubled young child having suffered the death of the man she believed was her father, the neglectful supervision by her mother, sexual abuse at the hands of her biological father, separation from her biological mother, and her placement into and removal from a previous foster home. Through counseling and commitment by the foster parents, KG has settled and developed into a much happier, healthier child who has bonded with her foster family.

7

TG remains optimistic about her life outside jail, testifying that she thinks she will get no more than ten months probation. She explained that she would like KG to stay with her foster family until such time that she was out of jail and back on her feet. This vague plan ignores KG's need for permanence and stability. "[T]he prompt and permanent placement of the child in a safe environment is presumed to be in the child's best interest." *See* TEX. FAM. CODE ANN. § 263.307(a). The foster family, again, plans to adopt KG and help to put her on the path to a happy, fulfilling life. The foster father explains: "I love [K.G.]. I want her to be safe. I want to give her a home to live in that's stable and secure and give her every opportunity that we can afford to give her."

Having considered the record evidence, we conclude it to be legally and factually sufficient to support the trial court's finding that K.G.'s best interest is served by terminating TG's parental rights. We overrule TG's second issue.

Having overruled both issues TG has presented on appeal, we affirm the trial court's order terminating the parent-child relationship between TG and KG.


Brian Quinn
Chief Justice

8