

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-19-00320-CV
_____

IN THE INTEREST OF M.T. AND J.T., CHILDREN

_____

On Appeal from the County Court at Law No. 3
Lubbock County, Texas
Trial Court No. 2016-522,331, Honorable Kelley Tesch, Presiding

_____

February 20, 2020

## MEMORANDUM OPINION

Before QUINN, C.J., and PARKER and DOSS, JJ.

In this accelerated appeal, Appellant, Father, seeks to reverse the trial court's order terminating his parental rights to M.T. and J.T.[1] In a single issue, Father challenges the finding that termination is in the best interest of the children. We affirm the judgment.

---

[1] To protect the privacy of the parties involved, we will refer to the father of the children as "Father" and to the children by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2019); TEX. R. APP. P. 9.8(b). The parental rights of their mother were also terminated in this proceeding. She did not appeal.

Background

In May 2018, eight-year-old M.T. and six-year-old J.T. were removed from Father's residence. Police sought the assistance of the Department of Family and Protective Services after responding to a domestic violence call from the children's home. When the police arrived, Father was intoxicated and pushing his girlfriend, M.H., around the house. The officers discovered marijuana hidden in multiple containers, three sets of digital scales, two grinders, two pipes, and rolling papers. When questioned, the children indicated that their father smoked marijuana in front of them and sold marijuana to his friends. They also told the CPS investigator that Father pushed his girlfriend and once banged his head against a door until the door broke. M.H. told the investigator that the children's Father would rather buy "weed" than pay bills, sells "weed," smokes daily, and permitted the electricity to be cut off. She also believed he was using cocaine at work. Upon removal, the children were placed with their great aunt and uncle. Father tested positive for marijuana and cocaine.

In July 2019, the final hearing was held. The State's evidence indicated that Father had a history of drug use, and had accumulated four drug-related convictions, and a DWI between 2006 and 2018. Although Father participated in services early in the termination proceedings,[2] he ultimately failed to improve on the conditions that resulted in the children's removal—domestic violence and drug use. Since the removal, the police were called out at least four times to Father's home for domestic violence complaints involving

---

[2] Father went several months without a positive drug test and attended services.

M.H. Father blamed his repeated drug use on the absence of his children and the stress it created.[3]

The evidence also showed that Father was subject to a court-ordered service plan that required him to cease drug use and domestic violence, in addition to creating a stable home environment. However, during the proceedings, the evidence showed Father continued using drugs, engaged in domestic violence, failed to provide proof of employment, failed to inform the Department of his new residence, and avoided the Department's attempts to inspect his new residence.

The children, who went to live with their great aunt and uncle, received counseling for exposure to domestic violence and drug use. Their counselor expressed concern that the children seemed to view the domestic violence between their Father and M.H. as "normal." The counselor opined that it was in the children's best interest to remain in their current placement because of her concern for their future. The children were aware they were not returning to Father's home because of his drug use, but expressed a desire to maintain a relationship with Father. The children were performing well in school and receiving any necessary medical care. Their great aunt and uncle expressed a willingness to keep the children long-term and adopt if Father's parental rights were terminated. Further, they are amenable to allowing the Father to continue having a relationship with the children.

---

[3] Father's counselor testified that Father did not complete his substance abuse treatment because he did not attend the group's last meeting or submit a relapse prevention plan. He expressed concern for Father's future sobriety because Father minimized his involvement with the Department, had not been honest in his counseling, and believed Father had not confronted his issues on domestic violence and drug use. He was concerned about placing the children back in Father's home and pointed out that Father had not made any attempt to rejoin his substance abuse class or work since his relapse in July 2019.

After the close of evidence, the trial court issued its order of termination, finding by clear and convincing evidence that Father had knowingly placed or allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (West Supp. 2019),[4] engaged in conduct or placed the children with persons who engaged in conduct which endangered their physical or emotional well-being; § 161.001(b)(1)(E), and failed to comply with the provisions of the trial court's order that specifically established the actions necessary for Father to obtain the return of the children. § 161.001(b)(1)(O). The trial court also found by clear and convincing evidence that it was in the children's best interest to terminate Father's parental rights and allow the children to remain with their great aunt and uncle. On appeal, Father does not challenge that he violated sections 161.001(b)(1)(D), (E), and (O). Instead, he contends there is insufficient evidence to support the finding that termination of Father's interests is in the best interest of the children.

Standard of Review

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* We disregard all evidence that a reasonable factfinder could have disbelieved or

---

[4] Throughout the remainder of this memorandum opinion, we will refer to provisions of the Texas Family Code as "§____" or "section ____."

found to have been not credible, but we do not disregard undisputed facts. *Id.* Even evidence that does more than raise surmise or suspicion is not sufficient unless that evidence is capable of producing a firm belief or conviction that the allegation is true. *In re K.M.L.*, 443 S.W.3d 101, 113 (Tex. 2014). If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legally insufficient and we must reverse. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We must also consider whether disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* If in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

### Applicable Law

Termination of Parental Rights

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In re E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is

5

essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In re C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In re E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In re J.F.C.*, 96 S.W.3d at 263.

The clear and convincing standard does not mean that the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In the Interest of T.N.*, 180 S.W.3d 376, 382 (Tex. App.—Amarillo 2005, no pet.). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* Also, the trier of fact, as opposed to the reviewing body, enjoys the right to resolve credibility issues and conflicts within the evidence. *Id.* It may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id.* at 382-83 (citing *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ)).

Best Interest

The Department was required to prove by clear and convincing evidence that termination of Father's parental rights was in the children's best interest. § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Our standard of review only permits us to reverse the judgment when no reasonable factfinder could have formed a firm belief or conviction that termination of his parental rights was in the children's best interest. *Id.* (citing *In re J.F.C.*, 96 S.W.3d at 266).

Father is entitled to a strong presumption that the best interest of the children would be served by preserving the parent-child relationship. *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, the presumption is not irrebuttable; the Texas Family Code provides a list of factors to assist the trier of fact in determining a child's best interest. § 263.307. In addition, the Supreme Court of Texas has articulated other factors to consider when determining the best interest of a child. *Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.*

In addition to the foregoing factors, evidence that supports one or more statutory ground for termination may be used to support the conclusion that that termination of parental rights is in the child's best interest. *See In re C.H.*, 89 S.W.3d at 28. *See also In re E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In re K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

## Analysis

In support of Father's argument that there is insufficient evidence to support the trial court's conclusion that termination of his parent-child relationship was in the best interest of the children, he relies on his testimony that in the past, he has provided a stable home, educational support, medical care, clothing, and food to the children. However, Father overlooks the evidence of his drug-related criminal record, history of drug use, the drugs hidden in multiple containers in his house, and that he was selling drugs out of his home during the time the children lived with him. The evidence showed that the children were aware of where the drugs were being hidden and that Father was selling the drugs to his friends.

In addition, the evidence shows that Father failed to comply with his service plan after only a few months. Despite initial success, Father tested positive for marijuana after undergoing substance abuse counseling and blamed his drug use on the absence of his children during the Christmas holiday. Father also tested positive for marijuana and cocaine one month before the final hearing. Father's failure to comply with his family service plan and repeated drug use supports the finding that termination of his parental rights is in the children's best interest. *In the Interest of S.B.*, 207 S.W.3d 877, 888 (Tex. App.—Fort Worth 2006, no pet.).

Further, the evidence shows a history of Father engaging in domestic violence, an activity contrary to the children's best interest. The children were initially removed when police arrived because of a domestic violence call. Investigators reported that the children had been exposed to such domestic violence activities at home that the children considered such activities to be "normal." Even while termination proceedings were

8

pending, Father and his girlfriend continued their on-again-off-again relationship, and the police received at least four additional domestic violence calls to his residence. One of these calls occurred as recently as a month before the final hearing. This evidence belies Father's assurances that he can maintain a safe living environment for the children or that their return would be in their best interest.

Juxtaposed against the backdrop of the children's living conditions during their time with Father is their performance since their removal. The children have been living with their great aunt and uncle. Their home is stable and drug free. There is no domestic violence. The children are responding well to counseling and performing well in school. Their great aunt and uncle have expressed a desire to adopt the children and they wish to keep the children long-term. The children have expressed a desire to continue a relationship with their Father, and their great aunt and uncle are amenable to allowing the relationship to continue, albeit outside the daily living environment the children were in with Father.

Based upon our review of the entire record, we conclude that the trial court could have reasonably formed a firm conviction or belief that termination of Father's rights was in the children's best interest. Therefore, we hold that the evidence is sufficient to support the trial court's finding that termination is in the children's best interest.

Conclusion

We affirm the judgment terminating Father's parental rights.

Lawrence M. Doss
Justice

9