

In The
Court of Appeals
Seventh District of Texas at Amarillo

_____

No. 07-19-00428-CV
_____

IN THE INTEREST OF D.R.C., A CHILD

On Appeal from the 100th District Court
Collingsworth County, Texas
Trial Court No. 8,186; Honorable Stuart Messer, Presiding

March 25, 2020

MEMORANDUM OPINION

Before QUINN, CJ. And PIRTLE and DOSS, JJ.

In this accelerated appeal, Appellant, R.K. the mother of D.R.C., seeks to reverse the trial court's order terminating her parental rights to D.R.C.[1]  In a single issue, the mother challenges the finding that termination is in the child's best interest.  We affirm the judgment.

---

[1] To protect the privacy of the parties involved, we will refer to the child by its initials and to R.K. as "the mother."  *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2019).  *See also* TEX. R. APP. P. 9.8(b). The parental rights of D.R.C.'s father were also terminated in this proceeding.  He did not appeal.

## Background

In December 2018, R.K. gave birth to D.R.C. and both tested positive for methamphetamine. The mother had a history of drug use and admitted to using drugs throughout her pregnancy. When an investigator for the Department of Family and Protective Services spoke with the mother at the hospital, she exhibited no interest in the cessation of her drug use. Later that month, D.R.C. was placed in foster care. After the Department filed its original petition to terminate the mother's parental rights, D.R.C. was placed with his paternal grandparents after a home study was performed.

In January 2019, the mother executed a plan of required services to be performed if she was to regain custody of her child.[2] When visited by CPS, she was uncooperative and would not schedule any services. At the meeting, CPS scheduled a drug test for the mother, but she failed to appear. When CPS next met with her, the mother expressed a desire to sign whatever papers were necessary to relinquish her parental rights. She was living with her father at the time who also had a history of drug use. She was unsure where she was going to live in the future because her father was going to be incarcerated for a drug possession offense. Although CPS provided the necessary papers for relinquishment, neither the mother nor her attorney ever submitted them to the Department or the trial court.

---

[2] Among other services, her plan required that she attend a substance abuse program and inpatient treatment.

During the proceedings, she did not initiate many of the services required by the plan and did not complete any services. When she appeared for a court-ordered drug test, she had a positive drug screen for amphetamine and methamphetamine.

In November 2019, a final hearing was held. Prior to the hearing, the Department was able to speak with the mother who admitted using methamphetamine during the termination proceedings. Because she failed to maintain contact with the Department, the Department was unsure where she was living. The Department's caseworkers testified that in their opinion, the mother had, among other things, knowingly placed or allowed D.R.C. to remain in conditions or surroundings which endangered his physical or emotional well-being; TEX. FAM. CODE ANN. § 161.001(b)(1)(D) (West. Supp. 2019),[3] engaged in conduct or placed the child with persons who engaged in conduct which endangered the child's physical and emotional well-being; § 161.001(b)(1)(E), and failed to comply with the provisions of the trial court's order that specifically established the actions necessary for the mother to obtain the child's return. § 161.001(b)(1)(E).

On the other hand, D.R.C. had bonded with his grandparents who were meeting his physical and mental needs. At the time of the hearing, he was ten months old. Both grandparents worked with him daily to help him reach milestones established in cooperation with state Early Childhood Intervention Services (ECIS). Both grandparents were employed and had hired a babysitter to stay with him while they were at work. Their long-term goal was adoption.

---

[3] Throughout the remainder of this memorandum opinion, we will refer to provisions of the Texas Family Code as "§____" or "section ____."

After the hearing's conclusion, the trial court issued its order of termination, finding by clear and convincing evidence that the mother had violated section 161.001(b)(1)(B), (C), (D), (E), (N), (O), and (P). On appeal, the mother does not challenge that she violated these provisions of the Family Code. Instead, she contends there is insufficient evidence to support the finding that termination of her parental rights is in D.R.C.'s best interest.

## Standard of Review

When reviewing the legal sufficiency of the evidence in a termination case, the appellate court should look at all the evidence in the light most favorable to the trial court's finding "to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). To give appropriate deference to the factfinder's conclusions, we must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. *Id.* If, after conducting a legal sufficiency review, we determine that no reasonable factfinder could have formed a firm belief or conviction that the matter that must be proven was true, then the evidence is legal insufficient, and we must reverse. *In re K.M.L.*, 443 S.W.3d 101, 113 (Tex. 2014).

In a factual sufficiency review, we must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266. We must determine whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the Department's allegations. *Id.* We must also consider whether the disputed evidence is such that a reasonable factfinder could not have resolved the disputed evidence in favor of its finding. *Id.* In light

of the entire record, if the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction, then the evidence is factually insufficient. *Id.*

Applicable Law

Termination of Parental Rights

The natural right existing between parents and their children is of constitutional dimension. *See Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S. Ct. 1388, 71 L. Ed. 2d 599 (1982). *See also Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Consequently, termination proceedings are strictly construed in favor of the parent. *In the Interest of E.R.*, 385 S.W.3d 552, 563 (Tex. 2012). Parental rights, however, are not absolute, and it is essential that the emotional and physical interests of a child not be sacrificed merely to preserve those rights. *In the Interest of C.H.*, 89 S.W.3d 17, 26 (Tex. 2002). The Due Process Clause of the United States Constitution and section 161.001 require application of the heightened standard of clear and convincing evidence in cases involving involuntary termination of parental rights. *See In the Interest of E.N.C.*, 384 S.W.3d 796, 802 (Tex. 2012); *In the Interest of J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002).

The clear and convincing standard does not mean that the evidence must negate all reasonable doubt or that the evidence must be uncontroverted. *In the Interest of T.N.*, 180 S.W.3d 376, 382 (Tex. App.—Amarillo 2005, no pet.). The reviewing court must recall that the trier of fact has the authority to weigh the evidence, draw reasonable inferences therefrom, and choose between conflicting inferences. *Id.* Also, the trier of fact, as opposed to the reviewing body, enjoys the right to resolve credibility issues and

5

conflicts within the evidence. *Id.* It may freely choose to believe all, part, or none of the testimony espoused by any particular witness. *Id.* at 382-83 (citing *In re R.D.S.*, 902 S.W.2d 714, 716 (Tex. App.—Amarillo 1995, no writ)).

Best Interest

The Department is required to prove by clear and convincing evidence that termination of the mother's parental rights is in D.R.C.'s best interest. *See* § 161.001(b)(2); *In re K.M.L.*, 443 S.W.3d at 116. Our standard of review permits us to reverse the judgment only when no reasonable factfinder could have formed a firm belief or conviction that termination of her parental rights was in the child's best interest. *Id.* (citing *In the Interest of J.F.C.*, 96 S.W.3d at 266).

There is a strong presumption that the best interest of the child will be served by preserving the parent-child relationship. *In the Interest of R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). However, the presumption is not irrebuttable; the Texas Family Code provides a list of factors to assist the trier of fact in determining a child's best interest. *See* § 263.307. In addition, the Supreme Court has set out other factors to consider when determining the best interest of a child. *See Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). Those factors include (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individual seeking custody; (5) the programs available to assist the individual to promote the best interest of the child; (6) the plans for the child by the individual or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent

that may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Id.* Importantly, the absence of evidence about some of these considerations would not preclude a factfinder from reasonably forming a strong conviction or belief that termination is in the child's best interest, particularly if the evidence were undisputed that the parental relationship endangered the safety of the child. *In the Interest of C.H.*, 89 S.W.3d at 27; *In the Interest of A.C.*, 394 S.W.3d 633, 642 (Tex. App.—Houston [1st Dist.] 2012, no pet).

In addition to the foregoing factors, evidence that supports one or more statutory grounds for termination may also constitute evidence illustrating that termination of parental rights is in the child's best interest. *See In the Interest of C.H.*, 89 S.W.3d at 28. *See also In the Interest of E.C.R.*, 402 S.W.3d 239, 249-50 (Tex. 2013). Additionally, a child's need for permanence through the establishment of a "stable, permanent home" has been recognized as the paramount consideration in determining best interest. *See In the Interest of K.C.*, 219 S.W.3d 924, 931 (Tex. App.—Dallas 2007, no pet.).

Analysis

In essence, the mother's evidentiary sufficiency arguments are to urge the strong presumption that D.R.C.'s best interest would be served by preserving the parent-child relationship. *In the Interest of R.R.*, 209 S.W.3d at 116. In her brief, the mother admits that D.R.C. is not currently threatened with emotional or physical danger because he is with his grandparents in a stable home. The mother's whereabouts, on the other hand, are unknown, and she has expressed a desire in the past to voluntarily relinquish her parental rights. After expressing that desire, she showed no interest in ceasing her drug

7

abuse; she continued using illegal drugs during the termination proceedings. Furthermore, she failed to complete her parenting classes and presents no evidence of parenting skills. The mother's failure to comply with her family service plan and repeated drug use supports the finding that termination of her parental rights is in the child's best interest. *In the Interest of S.B.*, 207 S.W.3d 877, 888 (Tex. App.—Fort Worth 2006, no pet.).

Moreover, D.R.C. is at an age where he completely depends on others for his care and well-being. He is in a stable, drug-free home where his emotional and physical needs are being met. His grandparents are steadily employed and are working with him on a regular basis to meet his ECIS milestones. His grandmother testified at the hearing that their long-term goal is "to adopt him, take care of him, love him, and try to make him a productive person."

Based upon our review of the entire record, we conclude that the trial court could have reasonably formed a firm conviction or belief that termination of the mother's parental rights was in D.R.C.'s best interest. Therefore, we hold that the evidence is sufficient to support the trial court's finding that termination is in his best interest.

Conclusion

We affirm the judgment terminating R.K.'s parental rights.

Lawrence M. Doss
Justice