

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-24-00150-CV

**IN THE INTEREST OF Q.M.-K.**, a Child

From the 150th Judicial District Court, Bexar County, Texas
Trial Court No. 2023PA00286
Honorable Richard Garcia, Judge Presiding

Opinion by:    Lori I. Valenzuela, Justice

Sitting:    Luz Elena D. Chapa, Justice
Beth Watkins, Justice
Lori I. Valenzuela, Justice

Delivered and Filed: August 7, 2024

AFFIRMED

Mother appeals the trial court's order terminating her parental rights to her child, Q.M.-K. (born 2023).[1] In three appellate issues that we review as two, Mother argues: (1) the evidence is legally and factually insufficient to support the trial court's termination findings under Texas Family Code section 161.001(b)(1)(D) and (E); and (2) the evidence is legally and factually insufficient to support the trial court's finding that termination was in Q.M.-K.'s best interest. We affirm.

---

[1] To protect the privacy of the minor child, we use initials to refer to the child; we refer to the child's biological parents as Mother and Father. TEX. FAM. CODE § 109.002(d); TEX. R. APP. P. 9.8(b)(2).

## BACKGROUND

On March 1, 2023, the Texas Department of Family and Protective Services (the "Department") filed its original petition to terminate Mother and Father's parental rights to Q.M.-K. Because Mother and Father were still in a relationship at the beginning of the case, the Department created a joint family service plan for the parties to follow. During the pendency of the case, however, the parties separated, and the Department created an individual service plan for each parent. Mother's individual plan required her to, *inter alia*, participate in drug testing and drug counseling, in individual counseling, and in a parenting course; provide proof of employment and proof of stable and appropriate housing. The Department ultimately pursued termination of Mother and Father's parental rights.

The trial court held a bench trial on January 31, 2024. The trial court heard testimony from six witnesses: (1) Father; (2) Father's counselor, Mike McMann; (3) Father's chemical dependency counselor, Elizabeth Armendariz; (4) Department investigator, Helen Kraus; (5) Department caseworker, Faith Parchen; and (6) Mother's Cousin ("Cousin"). Mother did not testify and appeared only through counsel. At the conclusion of the trial, the trial court signed an order terminating Mother and Father's parental rights pursuant to Texas Family Code section 161.001(b)(1)(D), (E), (O), and (P) and made findings that termination of Mother and Father's parental rights was in Q.M.-K.'s best interest. Only Mother appealed.

## ANALYSIS

### *Standard of Review*

The involuntary termination of a natural parent's rights implicates fundamental constitutional rights and "divests the parent and child of all legal rights, privileges, duties, and powers normally existing between them, except for the child's right to inherit from the parent." *In re S.J.R.-Z.*, 537 S.W.3d 677, 683 (Tex. App.—San Antonio 2017, pet. denied) (internal quotation

marks omitted). "As a result, appellate courts must strictly scrutinize involuntary termination proceedings in favor of the parent." *Id.* The Department has the burden to prove, by clear and convincing evidence, both that a statutory ground existed to terminate Mother's parental rights and that termination was in the best interest of Q.M.-K. TEX. FAM. CODE § 161.206; *In re A.V.*, 113 S.W.3d 355, 362 (Tex. 2003). "'Clear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." TEX. FAM. CODE § 101.007; *In re S.J.R.-Z.*, 537 S.W.3d at 683.

When reviewing the sufficiency of the evidence supporting a trial court's order of termination, we apply well-established standards of review. *See In re J.F.C.*, 96 S.W.3d 256, 263 (Tex. 2002). To determine whether the Department presented clear and convincing evidence, a legal sufficiency review requires us to "look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true." *Id.* at 266. We "assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so." *In re R.S.-T.*, 522 S.W.3d 92, 98 (Tex. App.—San Antonio 2017, no pet.). "A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to have been incredible." *In re J.F.C.*, 96 S.W.3d at 266. Nevertheless, "we may not simply disregard undisputed facts that do not support the finding; to do so would not comport with the heightened burden of proof by clear and convincing evidence." *In re S.L.M.*, 513 S.W.3d 746, 748 (Tex. App.—San Antonio 2017, no pet.). If a reasonable factfinder could form a firm belief or conviction that the matter that must be proven is true, then the evidence is legally sufficient. *Id.* at 747.

In contrast, in conducting a factual sufficiency review, we must review and weigh all the evidence, including the evidence that is contrary to the trial court's findings. *In re J.O.A.*, 283

S.W.3d 336, 345 (Tex. 2009). We consider whether the disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the challenged finding. *In re J.F.C.*, 96 S.W.3d at 266. The evidence is factually insufficient only if "in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction." *Id.*

In both legal and factual sufficiency review, the trial court, as factfinder, is the sole judge of the weight and credibility of the evidence. *In re A.F.*, No. 04-20-00216-CV, 2020 WL 6928390, at *2 (Tex. App.—San Antonio Nov. 25, 2020, no pet.) (mem. op.). We must defer to the factfinder's resolution of disputed evidentiary issues and cannot substitute our judgment for that of the factfinder. *See, e.g.*, *In re H.R.M.*, 209 S.W.3d 105, 108 (Tex. 2006) (per curiam) (factual sufficiency); *In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005) (legal sufficiency).

### *Statutory Termination Grounds*

#### *Applicable Law*

In Mother's first two issues, she challenges the legal and factual sufficiency of the evidence to support the trial court's predicate findings under subsections (D) and (E). *See* TEX. FAM. CODE § 161.001(b)(1)(D), (E). Assuming a best interest finding, generally only one predicate ground under section 161.001(b)(1) is sufficient to support a judgment of termination. *In re A.V.*, 113 S.W.3d at 362; *In re A.R.R.*, No. 04-18-00578-CV, 2018 WL 6517148, at *1 (Tex. App.—San Antonio Dec. 12, 2018, pet. denied) (mem. op.). When, as here, the trial court terminates a parent's rights on multiple predicate grounds, we may affirm on any one ground. *In re A.V.*, 113 S.W.3d at 362; *In re D.J.H.*, 381 S.W.3d 606, 611–12 (Tex. App.—San Antonio 2012, no pet.).

To be successful on appeal, an appellant must challenge all the predicate grounds upon which a trial court based its termination order. *In re S.J.R.-Z.*, 537 S.W.3d at 682. When an appellant does not challenge all the grounds that may support an order of termination, we typically

do not address the sufficiency of the evidence of any of the predicate grounds for termination. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682. Instead, we must accept the validity of the unchallenged grounds and affirm the termination order. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682.

However, because termination under subsection 161.001(b)(1)(D) or (E) may have implications for a parent's parental rights to other children, appellate courts are instructed to address issues challenging a trial court's findings under those subsections. *In re N.G.*, 577 S.W.3d 230, 236–37 (Tex. 2019). Therefore, we will consider Mother's sufficiency argument as to subsections (D) and (E) even though she does not challenge termination under subsections (O) (failure to comply with the provisions of a court-ordered service plan) and (P) (use of a controlled substance in a manner that endangers health or safety of the child). *See In re L.C.*, No. 12-19-00137-CV, 2019 WL 4727826, at *2 (Tex. App.—Tyler Sept. 27, 2019, no pet.) (mem. op.) (addressing parents' sufficiency challenges to subsections (D) and (E) even though they did not challenge all grounds upon which termination could be supported).

Subsection (D) allows a trial court to terminate parental rights if it finds by clear and convincing evidence that the parent has "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(D). Under subsection (D), the trial court examines "evidence related to the environment of the children to determine if the environment was the source of endangerment to the children's physical or emotional well-being." *In re J.T.G.*, 121 S.W.3d 117, 125 (Tex. App.—Fort Worth 2003, no pet.). "Environment" refers to the acceptability of the child's living conditions and a parent's conduct in the home. *In re S.R.*, 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied). "A child is endangered when the environment creates a potential for danger that the parent is aware of but consciously disregards." *Id*. A parent

does not need to know for certain that the child is in an endangering environment. *In re R.S.-T.*, 522 S.W.3d at 109. Awareness of the potential for danger is sufficient. *Id.* The relevant period for review of the environment supporting termination under subsection (D) is before the Department removes the child. *In re J.R.*, 171 S.W.3d 558, 569 (Tex. App.—Houston [14th Dist.] 2005, no pet.).

Subsection (E) allows a trial court to terminate a parent's rights if it finds by clear and convincing evidence that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child." TEX. FAM. CODE § 161.001(b)(1)(E). Under subsection (E), the trial court determines whether there is evidence that a parent's acts, omissions, or failures to act endangered the child's physical or emotional well-being. *See In re J.T.G.*, 121 S.W.3d at 125. Courts may consider parental conduct that did not occur in the child's presence, including conduct before the child's birth or after the child was removed from a parent's care. *In re K.J.G.*, No. 04-19-00102-CV, 2019 WL 3937278, at *4–5 (Tex. App.—San Antonio Aug. 21, 2019, pet. denied) (mem. op.); *see also In re R.R.A.*, 687 S.W.3d 269, 278 (Tex. 2024) ("While illegal drug use alone may not be sufficient to show endangerment, a pattern of drug use accompanied by circumstances that indicate related dangers to the child can establish a substantial risk of harm.").

*Application*

Turning to Mother's specific arguments, she contends the evidence presented at trial is legally and factually insufficient to establish she knowingly endangered Q.M.-K. or that she knew or had any reason to know Q.M.-K. may be in danger. Mother reasons that because Q.M.-K. was removed by the Department shortly after birth and because Kraus did not testify to any injuries or danger suffered by Q.M.-K., termination of her parental rights under subsections (D) and (E) are not supported by clear and convincing evidence. We disagree.

The trial court heard the following evidence relevant to its determinations under subsections (D) and (E): Mother used drugs while pregnant with Q.M.-K.; Mother tested positive for amphetamines when Q.M.-K. was born; Q.M.-K. had unaddressed developmental delays; Mother frequently associated with individuals who used illegal substances; and Mother was evicted during the pendency of the case, lived in her car and with friends, and failed to ever obtain stable housing. The trial court also heard evidence that Cousin was taking care of three of Q.M.-K.'s siblings and that Mother had shown up under the influence to visit. Additionally, Cousin testified that on one occasion, Mother took the children outside in thirty-degree weather without coats or shoes, and the police had to be called to ensure the children's return.

An unresolved history of drug abuse exposes Q.M.-K. to danger, potentially destabilizes the home, and exposes Q.M.-K. to physical and emotional harm. *See, e.g.*, *In re K.J.G.*, 2019 WL 3937278, at \*8. Moreover, Mother failed to attend months of scheduled drug testing required by the Department. The trial court could have inferred from Mother's failures to submit to court-ordered drug testing that she continued to use drugs. *See In re K.C.B.*, 280 S.W.3d 888, 895 (Tex. App.—Amarillo 2009, pet. denied) ("The trial court may infer from a refusal to take a drug test that appellant was using drugs."). Further, in addition to continued illegal drug abuse, Mother did not attend inpatient treatment, or substantially complete any of her services, and she continued to associate with known drug users. *See In re A.L.S.*, 660 S.W.3d 257, 273 (Tex. App.—San Antonio 2022, pet. denied) (finding endangerment, in part, because appellant did not finish the service-plan mandated counseling and continued to use drugs in violation of the service plan); *In re T.N.*, 180 S.W.3d 376, 385 (Tex. App.—Amarillo 2005, no pet.) ("Additionally, the evidence would support a conclusion that appellant's drug use and demonstrated association with other drug users would constitute a danger emotionally and physically both in the present and in the future.").

After reviewing the evidence under the appropriate standards of review, we conclude that a factfinder could have reasonably formed a firm belief or conviction that Mother knowingly allowed Q.M.-K. to remain in conditions and surroundings and engaged in conduct (e.g., prolonged illegal drug use—including during Mother's pregnancy with Q.M.-K.—and association with individuals who used illegal substances) that endangered the physical or emotional well-being of Q.M.-K. Moreover, we must accept the validity of the unchallenged grounds under subsections (O) and (P) and affirm the termination order on those predicate grounds. *See In re A.V.*, 113 S.W.3d at 361–62; *In re S.J.R.-Z.*, 537 S.W.3d at 682. Accordingly, we overrule Mother's first and second issues.

### *Best Interest*

#### *Applicable Law*

In Mother's final issue, she challenges the legal and factual sufficiency of the trial court's order that termination of her parental rights was in Q.M.-K.'s best interest. There is a strong presumption that a child's best interest is served by maintaining the relationship between a child and the natural parent, and the Department has the burden to rebut that presumption by clear and convincing evidence. *See, e.g.*, *In re R.S.-T.*, 522 S.W.3d at 97. To determine whether the Department satisfied this burden, the Texas Legislature has provided several factors[2] for courts to

---

[2] These factors include, *inter alia*: "(1) the child's age and physical and mental vulnerabilities; (2) the frequency and nature of out-of-home placements; (3) the magnitude, frequency, and circumstances of the harm to the child; (4) whether the child has been the victim of repeated harm after the initial report and intervention by the department; (5) whether the child is fearful of living in or returning to the child's home; (6) the results of psychiatric, psychological, or developmental evaluations of the child, the child's parents, other family members, or others who have access to the child's home; (7) whether there is a history of abusive or assaultive conduct by the child's family or others who have access to the child's home; (8) whether there is a history of substance abuse by the child's family or others who have access to the child's home; (9) whether the perpetrator of the harm to the child is identified; (10) the willingness and ability of the child's family to seek out, accept, and complete counseling services and to cooperate with and facilitate an appropriate agency's close supervision; (11) the willingness and ability of the child's family to effect positive environmental and personal changes within a reasonable period of time; (12) whether the child's family demonstrates adequate parenting skills [. . .]; and (13) whether an adequate social support system consisting of an extended family and friends is available to the child." TEX. FAM. CODE § 263.307(b).

consider regarding a parent's willingness and ability to provide a child with a safe environment, and the Texas Supreme Court has provided a similar list of factors[3] to determine a child's best interest. TEX. FAM. CODE § 263.307(b); *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

A best interest finding, however, does not require proof of any particular factors. *See In re G.C.D.*, No. 04-14-00769-CV, 2015 WL 1938435, at *5 (Tex. App.—San Antonio Apr. 29, 2015, no pet.) (mem. op.). Neither the statutory factors nor the *Holley* factors are exhaustive, and "[e]vidence of a single factor may be sufficient for a factfinder to form a reasonable belief or conviction that termination is in the child's best interest." *In re J.B.-F.*, No. 04-18-00181-CV, 2018 WL 3551208, at *3 (Tex. App.—San Antonio July 25, 2018, pet. denied) (mem. op.). "A trier of fact may measure a parent's future conduct by [her] past conduct [in] determin[ing] whether termination of parental rights is in the child's best interest." *In re E.D.*, 419 S.W.3d 615, 620 (Tex. App.—San Antonio 2013, pet. denied). This conduct can include drug use. *See, e.g., In re K.J.G.*, 2019 WL 3937278, at *8. In analyzing these factors, the court must focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't of Prot. & Regul. Servs.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). Evidence that proves a statutory ground for termination is also probative on the issue of best interest. *In re C.H.*, 89 S.W.3d 17, 28 (Tex. 2002).

*Application*

At the time of trial, Q.M.-K., eleven months old, was too young to express her desires. However, the trial court could have considered that: Q.M.-K. bonded with her foster mother—Cousin; Cousin planned to adopt Q.M.-K.; Cousin went on family medical leave to ensure Q.M.-

---

[3] Those factors include: (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist those individuals to promote the best interest of the child; (6) the plans for the child by these individuals or the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley v. Adams*, 544 S.W.2d 367, 371–72 (Tex. 1976).

K. became acclimated to her family; and Cousin has ensured Q.M.-K.'s medical needs are met. *See In re J.M.G.*, 608 S.W.3d 51, 57 (Tex. App.—San Antonio 2020, pet. denied); *In re A.M.M.*, No. 04-19-00806-CV, 2020 WL 2139308, at *4 (Tex. App.—San Antonio May 6, 2020, pet. denied) (mem. op.) ("That A.M.M. is thriving in the current placement with her maternal aunt and uncle in a stable and nurturing environment with a planned adoption further supports the trial court's finding that termination is in A.M.M.'s best interest."); *E.F. v. Tex. Dep't of Family & Prot. Servs.*, No. 03-11-00325-CV, 2011 WL 6938496, at *3 (Tex. App.—Austin Dec. 30, 2011, no pet.) (mem. op.) ("When assessing the desires of children too young to testify articulately, courts can consider their bond with their parents and prospective adoptive parents.").

Additionally, Parchen, the caseworker, testified termination was in Q.M.-K.'s best interest because Mother: did not demonstrate any behavioral changes that led to Q.M.-K.'s removal and placement in the Department's care; did not meaningfully engage in services; and did not provide proof of stable income or housing for Q.M.-K. *In re L.G.R.*, 498 S.W.3d 195, 205 (Tex. App.—Houston [14th Dist.] 2016, pet. denied) ("A child's need for permanence through the establishment of a 'stable, permanent home' has been recognized as the paramount consideration in a best-interest determination."); *In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) ("A fact finder may infer from a parent's failure to take the initiative to complete the services required to regain possession of [her] child that [she] does not have the ability to motivate [herself] to seek out available resources needed now or in the future."); *see also* TEX. FAM. CODE § 263.307(b)(10)-(12). Parchen also opined she did not believe Mother could meet Q.M.-K.'s basic needs at the time of trial or in the future.

Moreover, Mother's extensive unresolved history of drug use, as detailed above, including her drug use during pregnancy, exposed Q.M.-K. to danger, potentially destabilized the home, and exposed Q.M.-K. to physical and emotional harm. *See, e.g., In re K.J.G.*, 2019 WL 3937278, at

*8. Based on Mother's failure to submit to drug tests, the trial court could have reasonably found that Mother was continuing to use illegal drugs and could have believed that Mother was unwilling or unable to successfully complete the programs available to her. *See id.*; *In re J.M.T.*, 519 S.W.3d at 270.

After reviewing the evidence under the appropriate standards of review, we conclude a reasonable factfinder could have formed a firm belief or conviction that termination of Mother's parental rights was in the best interest of Q.M.-K. *In re J.F.C.*, 96 S.W.3d at 266; *Holley*, 544 S.W.2d at 371–72; TEX. FAM. CODE § 263.307(b). We therefore hold legally and factually sufficient evidence supports the trial court's best interest finding, and we overrule Mother's third issue.

## CONCLUSION

We affirm the trial court's order of termination.

Lori I. Valenzuela, Justice